## UNITED STATES FIDELITY & GUARANTY CO. v. CITY OF BRISTOW et al.

(District Court, E. D. Oklahoma. March 31, 1925.)

No. 3103.

1. Subrogation ⬥⬥8—Surety held subrogated in equity to right to retained percentage due contractor.

A surety company, which became surety for a contractor and obligated to pay claims for labor and material, and to which in the contract of suretyship the contractor assigned his right to retained percentages under the contract, held subrogated in equity to the right to such percentage, as against general creditors, to the extent that it paid claims for labor and material.

2. Subrogation ⬥⬥7(1)—A surety's equity of subrogation arises at the time the contract is made.

A surety's equity of subrogation arises at the time the relation of principal and surety comes into existence.

In Equity. Suit by the United States Fidelity & Guaranty Company against the City of Bristow, and the American National Bank of Bristow, Okl. On motion to strike affirmative answer of defendants. Motion granted.

C. A. Ambrister and Bower Broaddus, both of Muskogee, Okl., for plaintiff.

Thrift & Davenport, of Sapulpa, Okl., for defendants.

KENNAMER, District Judge. The Burke Construction Company, a partnership composed of M. C. Burke, J. M. Burke, and C. W. James, contracted on June 5, 1922, with the city of Bristow, Okl., for the construction of certain sewer extensions and a sewage disposal plant for said city. A provision of the contract was the requirement that the construction company execute and deliver certain statutory and construction bonds, said provision being as follows:

"The contractor shall file a statutory lien bond, subject to the approval of the city, in the full amount of the contract, guaranteeing the payment of all bills for labor, machinery rental, and materials used on the work. * * * The contractor shall furnish a bond in approximately the full amount of the contract price, conditioned for the faithful performance of the contract, and to indemnify the city against any loss or damage caused by, or due to, said construction work."

The construction company executed these bonds with the United States Fidelity & Guaranty Company as surety. Among other terms of the contract, it was provided:

"On or before the 1st day of each month, the engineer will make an approximate estimate of the material delivered, and the work done, and the contractor will be paid by the city in amount of 90 per cent. of the estimate, on or before the 10th of the month following. The 10 per cent. left from such estimates shall be retained by the city until the work has been completed and accepted."

Pursuant to said provision, 10 per cent. of the total estimate was retained by the city of Bristow until the final acceptance by the engineer of the sewer and sewage disposal line, on or about the 26th day of February, 1923. The defendant the American National Bank advanced and deposited in the said bank to the credit of the Burke Construction Company the sum of $5,000, to enable said construction company to pay for labor and materials done and furnished in the discharge of the contract with the said city. The sums so advanced were in fact expended from time to time as the construction work progressed in the payment of bills for labor done and materials and supplies furnished. After the defendant bank had advanced the money heretofore mentioned, the plaintiff surety company duly paid for materials furnished for the construction and erection of the said sewer line in amounts far in excess of the 10 per cent. retained by the city of the total estimate. The surety company was obligated and required to pay for such materials by virtue of the bond and contract it executed. A provision of the ap-

plication for the bonds as made by the construction company to the surety company is:

"In further consideration of the execution of the said bond, we do hereby agree, as of this date, that the said United States Fidelity & Guaranty Company shall, as surety on said bond, be subrogated to all our rights, privileges and properties as principal and otherwise in said contract, and we do hereby assign, transfer and convey to said company all the deferred payments, and retained percentages, and any and all moneys and properties that may be due and payable to us at the time of such breach or default. * * *"

The city of Bristow paid to the defendant the American National Bank $5,000, being the 10 per cent. of the total estimate retained by the city. This payment was made over the objections of the surety company. In this action the surety company seeks to recover the $5,000, which said sum represents the 10 per cent. of the total estimate retained by the city.

[1] No assertion of a lien on the sum retained is involved in the case, since the construction work was of a public nature. The claims of the complainant are based upon the doctrine of subrogation and an equitable lien on the 10 per cent. fund. Defendant relied upon the fact that the advancements went into the work and thus discharged the obligation of the surety, and for this reason the surety was not entitled to recover as against the city and the bank.

It is, to be observed that the assignment of the contractor's rights and property to the surety company, made in the application to it to become surety, that as surety —which had paid materialmen, and had thus released the contractor from his obligations to them, and had also satisfied the purpose of the city in requiring an obligation to see that laborers and supply men were paid—it has an equity in reserved percentages superior to that of general creditors. Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547.

In reference to the question of whether the agreement by the contractor, at the time he applied to the surety company, operated as an equitable assignment, it may be well to quote from the opinion of the court in the case of American Surety Co. v. Finletter (C. C. A.) 274 F. 152, at page 156:

"We are inclined rather to the views of the same court expressed in Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208, accepting the rule stated in Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865, to the effect that an express executory contract in writing, whereby the contracting parties sufficiently indicate an intention to make some particular property or fund, therein described or identified, a security for a debt or other obligation, creates an equitable lien on the property so indicated. Barnes v. Alexander, 232 U. S. 117, 120, 121, 34 S. Ct. 276, 58 L. Ed. 530; Hurley v. Ashbridge, 55 Pa. Super. Ct. 523, 526, 527; Stehle v. United Surety Co., 107 Md. 470, 68 A. 600. Applying this rule to cases where a contractor, seeking surety, pledges deferred payments —moneys certain to be due and clearly indicated—as an inducement for the bond, the courts have very generally recognized such a pledge as a valid consideration moving to the surety, first, to induce it to enter into the bond; and, second, at a reduced premium because of the reduced risk."

The above case was cited with approval by the District Court, Eastern Division of North Carolina, in Pratt Lumber Co., Inc., v. T. H. Gill Co. (D. C.) 278 F. 783, the last syllabus of which is as follows:

"A contractor's surety executing bonds conditioned for payment of subcontractors, materialmen, etc., on applications providing that all percentages retained on account of the contracts or due at the time of any breach were thereby assigned to the surety, etc., though having no claim on the reserved percentages by way of subrogation or equitable assignment, held to have a contractual right, measured by the terms of the contract to have such reserved percentages applied to the exoneration of the loss sustained by the contractor's failure to pay laborers and materialmen."

In view of the unbroken chain of authorities sustaining this proposition, it is unnecessary to cite additional authorities.

Assuming the bank advanced the money to the construction company upon the promise and belief that it was to be repaid from the retained 10 per cent., we have at most a promise by the construction company to assign this sum to the bank, and under such circumstances there would arise in favor of the bank an equitable assignment of the retained amount. This equitable assignment is subsequent in point of time to the assignment created in the application to the surety company. This assumption is indulged in for the purpose of show-

ing the priority of the equity of the surety company.

[2] Viewing the case from the standpoint of subrogation, which it occurs to me should be determinative of the rights of the parties, we find the surety company, by virtue of its contract of suretyship, securing an equity of subrogation at the time the relation of surety and principal came into existence. The case of Prairie State Bank v. United States, supra, has clearly established this doctrine of the law of suretyship, and I deem it unnecessary to add to the authority of such a well known case. The right of subrogation may arise by contractual or consensual suretyship, nonconsensual suretyship, and by mere payment of another's debts in certain cases. In the case under consideration we have the equity of subrogation in the surety company by reason of its contract, and this equity arose the moment the suretyship relation came into existence by the contract, as heretofore indicated. The bank lent the money directly to the construction company, which company handled and disbursed it as it saw fit. There was nothing to indicate whether the bank retained any supervision or control over the construction company as to these funds advanced. No doubt, if the construction company had attempted to use the funds for wild speculations, of which the bank had knowledge, it would have controlled the construction company in the use of such funds; but serious doubt arises as to whether the bank would have exercised control and supervision, if this construction company had employed a portion of the funds in other construction undertakings of a similar nature, assuming the construction company had other contracts.

If it had appeared that the bank advanced funds directly for the payment of wages and for supplies furnished, I should have been of the opinion that by such payment the bank would have been subrogated to the rights of the laborers and supply men whose claims had been discharged by such payments, and in such a situation the bank's equity of subrogation would attach and be prior to the equity of the surety company. There is nothing to establish such a right in the bank. The fact that the funds were used in the payment of claims of laborers and materialmen is insufficient to establish an equity of subrogation. It is necessary for the creation of such an equity that the claims be directly discharged by the advance. Since the sum was credited to the construction company, to be used in the performance of the contract, the bank can have only the rights of its assignor, the construction company. The surety company, by reason of its paying claims existing against the construction company because of its contract of suretyship, is subrogated to the rights possessed by the construction company. The construction company's right against the city is to receive full payment upon complete performance of its contract. The surety company completed the performance by paying claims remaining unpaid, and therefore is entitled to the rights the construction company had against the city. The doctrine of subrogation is an equitable one; it arises the moment the surety's risk arises, which generally is the time the suretyship relation springs up.

It was recently held by the Circuit Court of Appeals of the Eighth Circuit, in the case of London & Lancashire Indemnity Co. of America v. Endres, 290 F. 98, that where a contractor for government work became bankrupt, and it did not appear that other creditors were of the class protected by his bond as contractor, the surety on such bond, which was required to pay claims for labor and material furnished, was entitled by subrogation to an equitable lien on a fund paid by the government as compensation for extra expense incurred beyond the contract price, in completing the work. The doctrine of subrogation is one of long standing; a collection of the authorities sustaining such a doctrine is inapropos. Such a doctrine of subrogation is announced in the case of Henningsen v. United States Fidelity & Guaranty Co., supra.

For the reasons and upon the grounds set forth, I am of the opinion that the surety company is entitled to the 10 per cent. of the total estimate retained by the city of Bristow under its contract with the construction company, and, since the city has paid this sum to the defendant the American National Bank, the plaintiff, surety company, may reach the funds in the hands of the bank, because, as between the surety company and the bank, the surety company has a prior right to the funds.

It is so ordered.