CENTRAL STATE BANK OF CORSICANA, TEX., v. UNITED STATES FIDELITY & GUARANTY CO. et al. *

(Circuit Court of Appeals, Fifth Circuit. November 25, 1925.)

No. 4640.

Subrogation ⚙➔36—Bank, holding assignment of estimates to accrue, held not entitled to reserve fund as against claim of contractor's surety.

Where contract between building contractor and board of school trustees provided that any assignment of contract or any interest therein by contractor should not be binding on his surety unless assented to by surety, *held*, bank making advances to contractor and taking assignments of estimates to accrue, on insolvency of contractor, was not entitled to 15 per cent. reserve fund in hands of board, as against claim of surety which had not joined in assignment, and which admitted liability for unpaid claims of materialmen.

Appeal from the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Action by the United States Fidelity & Guaranty Company against the Central State Bank of Corsicana, Tex., and others. Decree for plaintiff, and the named defendant appeals. Affirmed.

Jos. Manson McCormick and Paul Carrington, both of Dallas, Tex. (J. S. Callicutt, of Corsicana, Tex., Etheridge, McCormick & Bromberg, of Dallas, Tex., on the brief), for appellant.

Walter F. Seay and Thos. T. Holloway, both of Dallas, Tex. (Seay, Seay, Malone & Lipscomb, of Dallas, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. The board of school trustees of the city of Corsicana, Tex., let a contract for the erection of a high school building, and the contractor erected the building, but upon its completion he owed $38,089.-15 for material used in its construction, and was insolvent. The school board withheld a balance of $32,313.18, which was accumulated by the retention of 15 per cent. of the contract price pursuant to the following provisions of the contract:

"The owner [school board], for and in consideration of the faithful performance of said work as aforesaid, agrees and is bound to pay unto the contractor the sum of two hundred thirty-seven thousand ($237,000) and no/100 dollars in installments, as follows, to wit: Eighty-five per cent. (85%) of the contract to be paid on the architect's certificate in writing that the work entitled to such payment has been done to his satisfaction; and fifteen per cent. (15%) upon the completion and delivery of said work, after the same has been accepted by the architect, and after all receipts of subcontractors for work and material furnished to said building have been produced to the architect, should he see fit to require such production, and provided said work shall have been done in all respects in compliance with the terms and provisions of this contract and the aforesaid drawings and specifications, and all payments of additional moneys that may become due to the contractor hereunder may be made in the same manner and proportions: Provided, that the wages of artisans and laborers, and all those employed by or furnishing material for said work, shall have been paid and satisfied, and in case the contractor shall fail so to pay and to satisfy all and every claim and demand against said building as aforesaid the owner may apply the moneys due and coming to the contractors towards paying and satisfying such claims and demands: * * * Provided that nothing herein contained, nor any variation from the amounts of the installments or from the manner and times of their payments shall be construed as impairing the right of the owner, or of those to whose benefit the bond given herein shall inure, to hold the contractor or surety liable on said bond for any breach of the conditions of the same, nor as imposing upon the owner any obligation to laborers, materialmen, subcontractors, or sureties, to pay or to retain for their benefit any moneys coming to the contractor hereunder."

The real parties at interest are the United States Fidelity & Guaranty Company and the Central State Bank of Corsicana, Texas, each of which claims to be entitled to the entire fund retained by the school board. The claim of the former is based upon the facts that it was surety for the contractor, and that the contract with the school board, which it as well as the contractor signed, contains the following provision: "No assignment of this contract nor of any interest shall be void or binding upon the owner without the written assent thereto of the owner and of the surety herein, and such assignment so assented to shall substitute the assignee for the contractor herein, and shall constitute the assignee joint principal co-obligor with the contractor in the bond herein."

*Rehearing denied January 4, 1926.   Certiorari denied 46 S. Ct. 353, 70 L. Ed. ——.

The bank bases its claim upon the following facts:

After the contract was entered into the contractor delivered to the school board the following letter: "In consideration of the Central State Bank of Corsicana, Texas, advancing us sums of money on our monthly estimates issued to us for the erection of the Corsicana high school, for which we have the contract, we have transferred and assigned to said bank all moneys due us on said estimates. This assignment covers the 85 per cent. to be paid us monthly on said estimates, as per contract, and the 15 per cent. retained which is to be paid upon final completion. Please deliver all checks issued to us by you in payment of said estimates to the Central State Bank."

Upon this letter the school board indorsed the following: "Central State Bank, Corsicana, Texas—Gentlemen: As requested, we will deliver to you all checks issued by us to the Brashears Construction Company in payment of estimates aforesaid."

The bank refused to make any loans to the contractor until the foregoing assignment was executed by him and accepted by the school board. Thereafter the bank made advances of money which were applied to the construction of the school building, and the contractor became indebted to it in excess of the reserve fund in the hands of the school board. However, at the time the assignment to it was made, the bank had examined the contract with the school board and had knowledge of its provisions and whatever rights the surety company had under it.

The surety company filed this suit, acknowledging its liability for the amount due to the materialmen, and prayed that the school board be required to deposit in the registry of the court the amount held by it, and that such amount be applied to the claims of the materialmen. The school board, the materialmen, and the bank were made parties defendant, and filed answers. The school board offered to pay the money in its hands into court, for distribution to the party or parties thereto entitled. The materialmen set up their claims, but raised no objection to the relief prayed by the surety company. The bank pleaded its assignment, and relies upon it as being superior to the claim of the surety company. The court entered a decree holding that the surety company's right to the funds tendered by the school board was superior to that of the bank.

The contractor never became entitled to demand the retained percentages, payment of which was made subject to the proviso that the materialmen should be paid. It is clear that, if the contractor had sued the school board, he could not have recovered. The force of the proviso requiring materialmen to be paid before the contractor became entitled to the reserved percentage is not impaired by the further proviso that the school board should not be under any obligation to the materialmen. Manifestly the last-mentioned proviso was for the benefit of the school board. The school board has not waived its right to require that the materialmen be paid either by the contractor or by the surety, nor has it undertaken to pay the money in its hands over to the bank. It is doubtful if the school board intended by its indorsement on the contractor's letter addressed to the bank to do more than to deliver to the bank such checks as might be issued to the contractor. In any event, the school board could not assign away the surety's rights, and therefore the bank's rights are not greater than the rights of the contractor.

The bank took its assignment with full notice of the clause of the contract which provided that no assignment should be binding without the written consent, not only of the school board, but of the surety also. That clause, in and of itself is, in our opinion, sufficient to establish the superiority of the surety's claim over that of the bank. Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547. It provides against assignment, without the surety's consent, not only of the contract itself, but of any interest therein, which of course included the reserve fund which is the subject of this controversy. The context makes it clear that the word "valid" was intended where the word "void" appears in that clause.

The surety company, upon signing the contract, also took an assignment of the contractor's interest in the reserve fund in the event of any default; but in our view it becomes unnecessary to consider the effect of that assignment.

The decree of the District Court is affirmed.