CITY OF DETROIT *v.* FIDELITY & DEPOSIT CO. OF MARYLAND.

1. PRINCIPAL AND SURETY—SEWER CONTRACT—LABOR AND MATERIAL CLAIMS—NOTICE—ASSIGNMENT OF CLAIM AS AGAINST RIGHTS OF SURETY—PRIORITY.

Where a bank loaned money to a sewer contractor and took an assignment of all moneys subsequently accruing under the contract, the conditional approval by the city of the assignment subject to labor and material claims, *held*, sufficient to at least put the bank on inquiry in regard thereto, in a suit to determine whether the bank or the surety, which paid all unpaid labor and material claims, was entitled to the balance due on the contract.

2. SAME—ASSIGNMENT TO SURETY—NOTICE TO CITY UNIMPORTANT.

The contention by the bank that no notice of any assignment to the surety by the contractor in its application for a bond, was given to the city, *held*, of little significance, since the city had no direct interest in such assignment.

3. SAME—BREACH OF CONTRACT—ASSIGNMENT TO SURETY BECOMES EFFECTIVE ON BREACH—PRIORITY OF ASSIGNMENT.

Where a sewer contractor, in its application for a bond,

---

[1]Municipal Corporations, 28 Cyc. p. 1047 (Anno). [2]Id., 28 Cyc. p. 1047 (Anno); [3]Contracts, 13 C. J. §§ 486, 487; Municipal Corporations, 28 Cyc. p. 1047 (Anno); 45 A. L. R. 379.

made an assignment to the surety of its rights under the contract in the event of abandonment, forfeiture, or breach, said assignment became effective as of the date of the bond, on its default in paying labor and material claims, although it completed the sewer according to contract, since the assignment clause is to be construed in the light of all other provisions of the application and written evidence with which it is connected, and, as between the contractor and surety, the contract and bond were both breached.

4. SUBROGATION — RIGHTS OF SURETY UNDER ASSIGNMENT AS AGAINST ANOTHER ASSIGNEE.

Where a sewer contractor, in its application for a bond, made an assignment to the surety of its rights under the contract in the event of its abandonment, forfeiture, or breach, the surety became subrogated to the contractor's right to the money withheld by the city, under the contract, pending completion of the work, on the surety's paying all labor and material claims on which the contractor was in default, as against a bank to which the contractor made an assignment of all money subsequently accruing under the contract.

Appeal from Wayne; Mandell (Henry A.), J. Submitted April 22, 1926. (Docket No. 106.) Decided October 3, 1927.

Bill of interpleader by the city of Detroit against the Fidelity & Deposit Company of Maryland and the People's State Bank to determine the right to a fund due on a sewer contract. From a decree for defendant Fidelity company, defendant bank appeals. Affirmed.

*Lightner, Oxtoby, Hanley & Crawford,* for appellant.
*Monaghan, Crowley, Reilley & Kellogg,* for appellee.

STEERE, J. In this case most of the important facts are undisputed and so stipulated by counsel. The R. H. Hidey Company, a Michigan corporation, was

⁴Subrogation, 37 Cyc. p. 428.

successful bidder in 1921 for constructing a portion of a public sewer described as "Section 8—Six Mile road sewer" in the city of Detroit.  The contract with the city for that section is dated October 25, 1921, the contract price being $96,991.  The higher bids varied from $105,596 to $168,996.  Incident to that contract, two bonds were given of a standard form, the first being to the city of Detroit for faithful performance of the contract, and the second to the State of Michigan for protection of subcontractors and materialmen, as required by Act No. 187, Pub. Acts 1905 (3 Comp. Laws 1915, § 14827 *et seq.*).  They were executed by the successful bidder and its surety, the Fidelity & Deposit Company of Maryland.

While the Hidey company made computations from which it estimated a profit on the contract of $16,000, and it is shown to have finished the work in accordance with the contract, disturbed financial conditions developed after the contract was taken which resulted in a loss to said company of $45,000, followed by its insolvency, with labor and material claims unpaid.

The application which the Hidey company made to the Fidelity company was executed October 31, 1921. It contains a protecting assignment to the latter and inducing statements upon which it relies in this case, amongst them being that payments on the contract were to be made monthly in cash with percentage reserved from payments until completion of 10 per cent. on completed work and 20 per cent. on material furnished, it had not assigned and would not otherwise assign its payments on the contract or any part thereof. The Hidey company paid the Fidelity company an initial premium of $1,454.86, following which the bonds were duly executed and delivered.

Work was promptly commenced and payments were made by the city to the Hidey company amounting to $22,854.15 on March 6, 1922.  On that date the latter made arrangements with the People's State Bank of

Detroit for a line of credit, and as security therefor executed to the bank an assignment of all money subsequently accruing to the company on the contract. That assignment was filed in the office of the city controller and marked: "Approved—Except as to labor claim and claims for materials for this work." Thereafter the city made payments as they became due on the contract to the bank holding this assignment. Those payments were applied by the bank on notes given it by the Hidey company, some of them being paid in full and others renewed.

The contract was completed some time in September, 1922, when it developed the Hidey company had failed to pay for certain labor and material furnished in the execution of the contract. Those unpaid claims amounted to $10,769.79. The creditors owning them made demand upon the Fidelity company for payment of their respective claims under the statutory bond. Investigation showed that each of those claims was a proper demand under such bond. The Hidey company then wrote the attorney of the Fidelity company a letter acknowledging their correctness in detail and saying:

"We are unable to pay these bills and would ask that the Fidelity & Deposit company pay them at its convenience."

The Fidelity company thereafter paid all of those claims and obtained a release from the respective claimants, with an appropriate description of the claims and other recitals, about which there is no question.

The Hidey company, on July 10, 1922, borrowed $7,000 from the bank, giving two notes therefor, one for $3,000 and the other for $4,000. As between themselves, this money was treated as secured by the assignment of payments on the sewer contract. At the time this case was heard, those notes were not paid, and there was due to the bank upon them, including in-

terest, $8,121.25.   It also appears that later in July the Hidey company borrowed $14,000 more from the bank upon its note indorsed by the father and brother of Ralph H. Hidey, president of said company.   This note was renewed and payments made on it from time to time, there being at the time of the hearing a balance due and yet unpaid of $2,800.

The money borrowed from the bank by the Hidey company was used by the latter to pay for labor and material which went into its sewer contract with the city, it being the only contract the Hidey company had at that time.

The result of these various transactions as a whole is that labor and material claims were all paid either by the Hidey company or the Fidelity company, and the city of Detroit still owed upon said contract the sum of $8,604.17, with interest amounting to $659.89. When this bill was filed the city had made total payments on the contract amounting to $89,063.67, and was yet owing a balance as above stated.

Plaintiff's bill of complaint was filed December 5, 1922, setting up that the Fidelity company claims this balance yet due from the city under the contract because of the payments it had made for labor, material, and other claims of like nature, while the People's State Bank claims the same under its assignment of March 6, 1922, from the Hidey company, that the city had no claim upon the money yet owing by it on the contract and was ready to pay the same to such corporation or persons as the court should direct.   It therefore prayed for injunction restraining the Fidelity company and bank from taking legal proceedings against it therefor, that they be required to interplead concerning their claims, and, pending the litigation, some person be authorized by the court to receive the amount due from the city, and that it be discharged from all liability to any or either of the defendants in relation thereto.

The defendants separately answered, stating in detail their claims to the money owing by the city on the contract. Upon application therefor, the court made an interlocutory decree, dated April 29, 1925, requiring that the answers on file be taken as interpleadings between defendants as to their respective claims, that they proceed to present and prosecute their claims to the funds in question, deposited with the register of the court by the city, according to the rules and practice of the court in such matters, as though each defendant had in form answered the claim of the other.

The case being at issue and final hearing had, the court found that the Fidelity company had sustained its claim to the fund, and was entitled to the sum theretofore paid to the clerk of the court by the city in connection with its interlocutory decree, concluding:

"That the said defendant, Fidelity & Deposit Company of Maryland, is entitled to the said sum of nine thousand two hundred sixty-four and 06/100 ($9,264.06) dollars to be paid to it by the clerk of this court upon the order of this court."

The case is clearly and concisely presented and briefed upon the only issue involved, which is the right of priority to this fund as between the Fidelity company and bank, to be disposed of as a question of law under the practically undisputed facts.

Appellant's introductory line of argument is that the bank, having in good faith loaned the Hidey company money it needed and used to complete its contract, taking as security an assignment of payments thereon as they fell due, and giving immediate notice thereof to the city, which approved and recognized the same, thereafter making payments as they fell due on the contract to it, is entitled to the earned and unpaid balance, unless the Fidelity company "can assert a better right to the fund," which it cannot do as it—

"Has no standing on the claim asserted in its answer of an assignment given to it in the application by the Hidey company for the bond, because the work was completed by the contractor and any reference to an assignment in the application was conditioned 'only in event of any such abandonment, forfeiture, or breach.' Also, no notice of any alleged assignment was given to the debtor, the city of Detroit, by the defendant surety company."

It is to be noted that the city never approved or recognized the contractor's assignment to the bank as applied to labor and material claims, but specifically excepted them in its approval indorsed on the assignment, which was, as to them, in signification a clear *caveat* to the assignee sufficient at least to put the bank on inquiry.  It is conceded that the Fidelity company never consented to or recognized the contractor's assignment to the bank.

We see little significance in the contention that no notice of any assignment was given to the city of Detroit by the Fidelity company.  The city itself had no direct interest in such assignment.  It was protected as to labor and material claims in three ways: by the bond given under the statute to the State, by the bond running directly to the city, and by the provision in its contract for construction of the sewer authorizing it to reserve a percentage of the payments as they fell due until completion of the contract.  Just when the city first became advised of the Fidelity company's assignment is not clearly shown, but it was so specifically notified in writing by the Fidelity company's attorney on September 2, 1922, before it had paid the delinquent material and labor claims.  In that notice full details as to the application for and nature of the contract for suretyship are stated. Written application by the contractor for the bonds with the conditions and provisions it contained was introduced in evidence without objection.

The contention that there was no violation by the

contractor under the condition in the application as to abandonment, forfeiture, and breach is not tenable. That clause is to be construed in the light of all other provisions of the application and written evidence with which it is connected.    It clearly contemplates more than mere failure to complete the work.    By the application itself the contractor authorizes the Fidelity company, at its option, "in the event of any abandonment or forfeiture of the contract guaranteed by said bond or any breach of said contract or contract bond, to take possession of the work," etc., which is followed by a provision that the contractor agrees—

"To assign, transfer and set over, and does or do hereby assign, transfer and set over to the company, such assignment to become effective, as of the date of said contract bond, but only in event of any such abandonment, forfeiture or breach as aforesaid; * * * (c) any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach, or that thereafter may become due."

It seems plain that the assignment becomes effective under the agreement provided for in the application upon the breach of either the contract or bonds for which the application was made, and, when the Hidey company defaulted in paying outstanding claims for labor and material, the contract and bond were both breached, as between the contractor and its surety, and the assignment became effective as of the date of the bond, which was long prior to the assignment made by the contractor to the bank.

But irrespective of the assignment to the Fidelity company provided in the contractor's application, we are convinced it is entitled to the fund in controversy under the theory of subrogation as applied by this court in *Board of County Road Com'rs of Calhoun Co.* v. *Surety Co.*, 216 Mich. 528.    Only the question of

subrogation was considered in that case and found controlling. The court there sustained the rights of the surety as against a bank to which the contractor had subsequently assigned all moneys due or to become due on his contract to secure funds, as was claimed, with which to carry on the contract. Among other things the court quoted from *Henningsen* v. *Guaranty Co.*, 208 U. S. 404 (28 Sup. Ct. 389), the following, which is well in point here:

"Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation; but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money;" 20 analogous cases from various jurisdictions are also cited."

On the principles involved, we are unable to recognize the importance of claimed distinctions in fact urged by appellant. The question was again before this court in the recent somewhat analogous case of *Fidelity & Casualty Co.* v. *Livingston*, 234 Mich. 375, 382, where, in the controlling opinion, the rule of priority in favor of a surety as against a subsequent volunteer and creditor is reaffirmed and the above quotation repeated, with further citation of authorities. In the still later case of *State, ex rel. Southern Surety Co,* v. *Schlesinger*, 114 Ohio St. 323 (151 N. E. 177), the controlling opinion by Chief Justice Marshall exhaustively reviews this question with extensive citation of authorities and arrives in his reasoning at a like result.

The decree will stand affirmed, with costs against appellant.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.