## EXCHANGE STATE BANK v. FEDERAL SURETY CO.

Circuit Court of Appeals, Eighth Circuit.
September 17, 1928.

No. 8044.

See, also, 28 F.(2d) 489.

T. F. Railsback, of Kansas City, Kan. (J. H. Brady, of Kansas City, Kan., on the brief), for appellant.

David A. Murphy, of Kansas City, Mo. (John T. Harding and R. C. Tucker, both of Kansas City, Mo., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. This is a suit in equity, brought by appellee to have adjudicated conflicting claims of appellant and appellee to certain moneys in the hands of the board of county commissioners of Wyandotte county, Kansas. Jurisdiction is based upon diversity of citizenship and requisite amount involved.

The facts in the controversy are largely undisputed, and are substantially as follows: On May 29, 1922, J. R. Rand, H. J. Rand, E. W. Rand, and H. M. Rand, a copartnership under the name of Rand Construction Company (hereafter called the Construction Company), entered into a contract with Wyandotte county, Kansas, whereby the Construction Company agreed to furnish all labor and materials, and to construct a section of the Fort to Fort Highway road in said county, known as "Federal Aid Project No. 102." In connection with the work, the Construction Company, as principal, and the Federal Surety Company, as surety, executed a bond as required by the state statute, conditioned for the payment of "all indebtedness incurred for labor or material furnished in the construction." The application for the bond contained an idemnity agreement which contained the following provision:

"That the said company, as surety on said bond, as of this date, shall be subrogated to all our rights, privileges, and properties as principal and otherwise in said contract, and said principal does hereby assign, transfer, and convey to said company all the deferred payments and retained percentages, and any and all money and properties that may be due and payable to said principal at the time of such breach or default, or that may thereafter become due and payable to said principal on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such moneys and the proceeds of such payment and properties shall be sole property of the said company, and to be by it credited upon any loss, damage, charge, and expense sustained or incurred by it as above set forth under its bonds or suretyship."

By the terms of the construction contract between the Construction Company and the county it was provided that a portion of the contract price should be paid to the Construction Company monthly on estimates; the balance to be retained by the county until the completion and acceptance of the work and until the payment of all indebtedness for labor and material used in the construction.

The Construction Company failed to carry out its contract, and the work was finally completed by the Surety Company or under its direction, and was accepted by the county. In completing the work the Surety Company paid out $12,781.82. There still remained outstanding unpaid claims for labor and materials, amounting to upwards of $30,000. The Surety Company, during the present litigation, paid certain of these claims, amounting to $24,012.91, and took an assignment thereof.

The appellant, the Exchange State Bank (hereafter called the bank), had extended a line of credit to the Construction Company from about the time when the construction contract with the county was entered into. On May 18, 1923, the bank held notes of the Construction Company, amounting to $36,041.10, for moneys loaned. This money had been used very largely in payment for labor and material for the construction of the road. On May 18, 1923, the bank took an assignment from the Construction Company reading in part as follows:

"Therefore the said Rand Construction Company does by these presents assign, sell and transfer to the said Exchange State Bank of Kansas City, Kansas, or order, all money due said company on the final estimate, including the 10 per cent. held back until final completion and acceptance of the work on Federal Aid Project No. 102, the same being a part of the Fort to Fort Highway, giving and granting to the said bank, its officers and assigns, the right to receipt therefor or sign any instrument of writing necessary to satisfy the said Wyandotte county, in the place and stead of the said Rand Construction

Company, the said company hereby ratifying such acts."

This assignment was filed with the county clerk of Wyandotte County on the same day. On May 19, 1923, the bank took from the Construction Company a chattel mortgage on its equipment in Kansas City, Kansas, to secure the indebtedness due the bank. In June, 1923, the Construction Company made a deed of trust for the benefit of this bank and a bank at Topeka to secure an indebtedness of $100,000. This deed of trust covered all of the equipment of the Construction Company, together with certain real estate.

The bank continued to loan money to the Construction Company, but in October, 1923, the use of "assignment checks" began. These operated as an assignment in writing of the claim of the payee, whether he was a materialman or a laborer. The bank, by cashing such checks, stood in the shoes of the payee, by virtue of the assignment. The aggregate amount of such "assignment checks" for labor and material was $5,793.33. The Surety Company knew that the Construction Company was borrowing money from the bank to help finance the work, and the bank knew that the Surety Company had executed the surety bond in compliance with the statutes of the state.

The account of the Construction Company at the bank was closed in November, 1923. At that time the Construction Company owed the bank $29,603.78, $10,000 of which represented a loan made prior to May 18, 1923. At the time the present suit was commenced, in December, 1923, the county was holding in its hands $31,364.26, the balance due under the construction contract.

The Surety Company in its suit joined as parties defendant the Construction Company, the county commissioners of Wyandotte county, the bank, and all other parties having claims for labor or material in connection with the constructed road. The prayer of the bill was that the Surety Company be adjudged to have an equitable lien on the funds in the hands of the county prior to the lien or claims of all other parties; that the bank and all other claimants be enjoined from prosecuting any suit against the Surety Company on its bond, except by bill of intervention in the present suit; that the various defendants who were claimants be required to set up their claims and have them determined.

Various defendants answered, and the case was referred to a special master. Some of the claims filed were allowed; some were disallowed. Most of those which were allowed were purchased by the Surety Company and assignments taken.

The special master found the facts substantially as above set out, and held that the Surety Company had an equitable lien on the moneys in the hands of the county which was superior to the rights of the bank under its assignment. As to the claim of the bank, the special master held that the $5,793.33, which was represented by the "assignment checks," should be paid in full out of the funds in the hands of the county. The special master further held that after such payment to the bank the balance of the moneys in the hands of the county should be paid to the Surety Company on its total claim of $36,794.73, being made up of $24,012.91 assigned claims and $12,781.82, the cost of completing the work. The court affirmed the findings of the special master, and a decree was entered accordingly. This appeal followed.

The contentions of appellant, briefly stated, are: (1) That the Surety Company, having taken a legal assignment of the moneys to become due under the construction contract, cannot, in view of that fact, be accorded an equitable lien on said moneys; (2) that the legal assignment to the Surety Company, though prior in time to the bank's assignment, is nevertheless inferior thereto, because of equities in favor of the bank.

■■ We think the first contention of appellant rests upon a misconception of the nature of an equitable lien, as well as of the real status of the assignment agreement contained in the application for the bond. An equitable lien may arise ex æquo et bono, or it may arise out of an express contract. 37 C. J. 315, 319; Pomeroy, Eq. Juris. (3d Ed.) §§ 1239, 1235; Bispham on Equity, § 351; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865. And we see nothing in the nature of an equitable lien which would prevent it from having its origin in both sources. In such cases the express contract would serve to make definite and certain some elements which otherwise would have to be ascertained from surrounding facts and circumstances.

Such, we think, is the proper construction to be placed upon the assignment agreement in the bond application in the case at bar. That the equitable lien may be enforced, though an assignment agreement exists, has been held in numerous cases. American Surety Co. v. Finletter (C. C. A.) 274 F. 152; U. S. F. & G. Co. v. City of Bristow (D. C.) 4 F.(2d) 810; Ottumwa

Boiler Works v. O'Meara (Iowa) 218 N. W. 920; City of Detroit v. Fidelity & Deposit Co., 240 Mich. 213, 215 N. W. 394. We have not been cited to any case holding the contrary. It may, indeed, be doubted whether such assignment agreements in surety bond applications can be given any force, except the limited one above indicated. See Jenkins v. National Surety Co., 277 U. S. 258, 48 S. Ct. 445, 72 L. Ed. 874, opinion filed May 14, 1928. We think that the trial court in the case at bar properly held that the Surety Company had an equitable lien.

■ That the equitable lien thus recognized arose at the time of the execution of the bond and was superior to the assignment to the appellant bank is decided by the great weight of authority. Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. U. S. F. & G. Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321; Greenville Sav. Bank v. Lawrence (C. C. A.) 76 F. 545; First Nat. Bank v. City Trust, etc., Surety Co. (C. C. A.) 114 F. 529; Hardaway & Prowell v. National Surety Co. (C. C. A.) 150 F. 465; Illinois Surety Co. v. City of Galion (D. C.) 211 F. 161; American Bonding Co. v. Central Trust Co. (C. C. A.) 240 F. 400; Cox v. New England Equitable Ins. Co., 247 F. 955 (C. C. A. 8); New Amsterdam Casualty Co. v. City of Astoria (D. C.) 256 F. 560; Massachusetts Bonding & Ins. Co. v. Chouteau Trust Co., 264 F. 793 (C. C. A. 8); Belknap Hardware & Mfg. Co. v. Ohio River Contract Co. (C. C. A.) 271 F. 144; London & Lancashire Indemnity Co. v. Endres, 290 F. 98 (C. C. A. 8); Maryland Cas. Co. v. City of Cincinnati (D. C.) 291 F. 825; Chouteau Trust Co. v. Massachusetts Bonding & Ins. Co., 1 F.(2d) 136 (C. C. A. 8); U. S. F. & G. Co. v. City of Bristow (D. C.) 4 F.(2d) 810; Central State Bank v. U. S. F. & G. Co. (C. C. A.) 9 F.(2d) 326; Southern Surety Co. v. Holden Co., 14 F. (2d) 411 (C. C. A. 8); Maryland Cas. Co. v. Dulaney Lumber Co. (C. C. A.) 23 F. (2d) 378; Duncan v. Guillet, 62 Colo. 220, 161 P. 299; City of Detroit v. Fidelity & Deposit Co., 240 Mich. 213, 215 N. W. 394. In the Prairie State Bank Case, supra, the court said (page 233 of 164 U. S. [17 S. Ct. 145]): "That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed, that it raises an equity in the surety in the fund to be created, * * * is amply sustained by authority."

In the Henningsen Case, supra, the syllabus reads as follows: "The equity of the surety on a bond given by a contractor under the Act of August 13, 1894, 28 Stat. 278 [40 USCA § 270], who by reason of the contractor's default has been obliged to pay materialmen and laborers, is superior to that of a bank loaning money to the contractor, secured by assignments of amounts to become due. In such a case the surety is subrogated to the rights of the contractor, but the bank is not."

In Southern Surety Co. v. Holden Co., supra, this court said: "The general rule is that the right of subrogation of a bonding company, acting as surety on a contractor's bond, which has completed the work of the defaulting contractor, relates back to the time of the original contract by the contractor, and is superior to the equity, if any, of a party loaning money to the contractor, even though the money loaned is used to pay for materials actually used in the work."

One other matter is complained of by appellant, viz.: That it was not accorded a judgment against the Construction Company. From the record before us we are not able to say whether the Construction Company was served with process and appeared in the suit; whether it answered, and, if so, what issues it raised. Under the circumstances, we are unable to say that appellant was entitled to judgment against the Construction Company in this suit. The trial court did not definitely pass upon the question. We, therefore, affirm the decree without prejudice to the right of appellant to apply to the court below to pass upon the question whether judgment should be entered in favor of appellant against the Construction Company.

It is so ordered.