FIRST CAMDEN NAT. BANK & TRUST CO. v. AETNA CASUALTY & SURETY CO. (WILLIAM EISENBERG & SONS, Inc., et al., Third-Party Defendants).

Civil Action No. 34.

District Court, D. New Jersey.

March 10, 1942.

Boyle & Archer, of Camden, N. J., for plaintiff.

Starr, Summerill & Lloyd (by Alfred E. Driscoll), of Camden, N. J., Rawle & Henderson (by Thomas F. Mount and Joseph W. Henderson), of Philadelphia, Pa., for defendant and third-party plaintiff.

Carroll & Taylor (by Walter R. Carroll), of Camden, N. J., for third-party defendants William Eisenberg & Sons, Inc., and Israel Eisenberg.

Carl Kisselman, of Camden, N. J., for third-party defendant Harry Eisenberg.

FORMAN, District Judge.

On February 28, 1935, William Eisenberg & Sons, Inc., made a contract with the United States for the erection of a dam at Beach City, Ohio, and on March 6, 1935, through its president, Harry Eisenberg, and secretary and treasurer, Israel Eisenberg, made application to and received from Aetna Casualty and Surety Company, as surety, a bond to the United States of America in the principal amount of $421,757.05 as required by the Heard Act, 40 U.S.C.A. § 270, conditioned upon the performance of the work and for the payment of all bills for labor and materials incurred in the prosecution of said work.

Paragraph 2 of the application provides as follows: "The indemnitor(s) will at all times indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all damages,

loss, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney fees, whether incurred under retainer or salary or otherwise, which it shall or may at any time sustain or incur in connection with any litigation, investigation, collection of premiums, or other matter connected with such suretyship, including any suit instituted to enforce the obligations of this agreement of indemnity; and the indemnitor(s) will pay over to the Company, its successors and assigns, all sums of money which it or its representative shall pay or cause to be paid, or become liable to pay on account of such suretyship, and on account of any damages, costs, charges, and expenses of whatsoever kind or nature in connection therewith as aforesaid, such payment to be made to the Company as soon as it shall have become liable therefor, whether it shall have paid out such sum or any part thereof or not, and said Company is hereby authorized to prove such expenses, costs and attorney fees, in any action or proceeding and to include the same in any judgment."

Paragraph 4 of the application provides as follows: " * * * said principal(s) do hereby assign, transfer and convey to said company [the surety] all the deferred payments and retained percentages arising out of this contract, and any and all monies and properties that may be due and payable to said principal(s) * * * if the principal fails to pay bills incurred on the work, when they become due and payable, whether the company may be liable for such bills or not."

Thereafter the Eisenberg Corporation proceeded with the work under the contract, and by December of 1936 it found itself in financial difficulties as it did not have money to pay outstanding bills for labor and materials, although the government owed it approximately $43,000 representing retained percentage under the contract. Hence, in December, 1936, and on January 6, 1937, Israel Eisenberg conferred with representatives of the surety, and revealed the financial status of the Eisenberg Corporation with the hope that it would either cooperate in persuading the government to release the retained fund for the payment of bills or lend it money for that purpose. Representatives of the surety suggested that inasmuch as its bond guaranteed the payment of labor and material bills, it would recognize assignments of such claims to any bank lending money

to the Eisenberg Corporation and guarantee their payment, but that it would be necessary for the Eisenberg Corporation to execute a power of attorney authorizing it to collect future payments from the government in order to insure application of payments to labor and material bills. Israel Eisenberg objected to the execution of a power of attorney on the ground that it would jeopardize the corporation's relation with the government. However, he promised orally that he would personally see that future payments under the contract were applied to labor and material bills. Afterwards, Israel and Harry Eisenberg discussed the matter with the First Camden National Bank and Trust Company whose Finance Committee considered a proposed loan on January 19 and February 2, 1937, but deferred action until the receipt of more details regarding the retained percentage and the form of the original contract for construction. On the latter date the bank addressed a letter to the surety inquiring as to the condition of the contract, asked for an explanation concerning the retained percentage and advice as to time of payment thereof after final payment. This information was furnished on February 5, 1937. The bank then procured from the Eisenberg Corporation a copy of the bond to the United States.

Pending the negotiations between the Eisenberg Corporation and the bank, the surety again requested on February 18, 1937, that the Eisenberg Corporation execute a power of attorney authorizing it to receive future payments under the contract for application to labor and material bills which was again refused. On this occasion, however, Israel Eisenberg promised the surety in writing as follows: "Should anything occur which might jeopardize the ability of this company to complete the Beach City project according to contract, the Wm. Eisenberg & Sons, Inc., hereby pledges itself to notify you immediately and to place in your hands a power of attorney to receive all future estimates and to collect the proceeds thereon, permitting this company to complete the project by giving your company joint control of the funds to be received from the project."

On February 23, 1937, the surety addressed a letter to the bank as follows:

"Heretofore, on or about the 6th day of March, 1935, the Aetna Casualty & Surety Company, as surety, executed a contract bond running to the United States of Amer- ica in the amount of $412,757.05, which said bond, in accordance with the provisions of the Hurd [Heard] Act (40 U.S.C.A. § 270), guaranteed the faithful performance by William Eisenberg & Sons, Inc., of a contract with the Government for the construction of a dam at Beach City, Ohio, and payment of all bills for labor and material incurred in connection therewith. We are informed that the value of the work done to date under this contract amounts to approximately $660,251.58, and that the contractor has already received payments of $616,745.82, leaving retained percentage 'earned' in the approximate amount of $43,000.20.

"It appears that the contractor is heavily indebted for labor and material bills, and while the responsibility of the Aetna as surety for the actual payment of such bills does not accrue until six months after the final settlement of the contract, its liability for this eventual payment is nevertheless fixed and definite for all labor and material bills which may be shown to have been incurred in connection with the project.

"The contractor has informed us that he desires to borrow from you the sum of $30,000 to be used for the sole purpose of paying the following bills for material and labor incurred in the project above mentioned: * * *

"We are further informed that you will take as security for this loan an assignment from each material and labor claimant of all of his rights of every description against this Company on the aforesaid bond executed for William Eisenberg & Sons, Inc. Being desirous of assisting the contractor in procuring such loan, and in consideration of your making such loan to them, and as an inducement to you so to do, it is hereby agreed as follows:

"(1) We affirm our aforesaid bond to be a valid and subsisting obligation, and further affirm that it is unqualifiedly liable for the bills hereinbefore listed in the amounts indicated above, and we hereby estop ourselves from denying the fact in any court to your prejudice.

"(2) If you take assignments of such bills, and claims, on a form similar to the one attached hereto, or on any other appropriate form, we hereby agree to recognize such assignment to the fullest extent, and agree to pay the bill evidenced thereby, without interest, however, or so much thereof as remains unpaid at the expiration of six months subsequent to the final settlement of the foregoing construction

contract at all events, not later than one year from February 23, 1937.

"The situs of this guaranty is New Jersey and shall be construed under the laws of said State."

Following receipt of this letter, the bank lent the Eisenberg Corporation $29,912.36 which was used for the payment of laborers and materialmen from whom the bank took assignments of their claims. It also took a demand note in the aggregate amount from the Eisenberg Corporation.

Following the above transaction, the Eisenberg Corporation proceeded with the work, and on August 6, 1937, Israel Eisenberg addressed a letter to the surety advising that the work had been entirely completed, the last paragraph of which provided as follows: "In carrying out the completion of this project, we wish to assure you that we have endeavored to the best of our ability to adhere to our verbal agreements as to the use of the moneys received. We have in the past and are now endeavoring to adhere to this arrangement in the most honorable manner possible, and will always endeavor to do so."

In November, 1937, it appeared that the money due the Eisenberg Corporation under its contract with the government would be insufficient to pay bills for labor and materials, and the surety again demanded of Israel and Harry Eisenberg the execution of a power of attorney authorizing the payment of government checks in its favor to insure application of payments to laborers and materialmen, and in the alternative the surety threatened to impound future payments to the corporation by instituting a suit in equity. Again, Israel Eisenberg sought a compromise. Later in November a formal demand for the power of attorney was made of Israel and Harry Eisenberg and again a compromise was sought. The surety relented and relied on an oral agreement to turn over the government checks.

On December 11, 1937, the semi-final payment in the amount of $15,924.17 was received by the Eisenberg Corporation. Harry Eisenberg endorsed it and presented it to the surety together with a list of bills to be paid from the proceeds. The surety cashed the check and made funds available in an equal amount in the City National Bank of Philadelphia out of which the Eisenberg Corporation did pay the designated credi-

tors. That bank was presented with a certified copy of a resolution of the Eisenberg Corporation authorizing the opening of the account, and Harry and Israel Eisenberg signed signature cards.

On January 10, 1938, the Eisenberg Corporation received the final payment of $58,-299.21 under the contract. Harry and Israel Eisenberg decided that it was to the best interest of the Corporation to pay the money out to banks and other creditors which had unsecured obligations, and that they were under no duty to turn the money over to the surety. This check was deposited in the general bank account of the Eisenberg Corporation in the Northwestern National Bank of Philadelphia, and a check was drawn against it payable to the First Camden National Bank and Trust Company in the amount of $20,500 being the balance due on its unsecured obligation. In addition to the above sum, it is alleged that there was paid to the plaintiff bank the sum of $917.-76 interest on the unsecured loans to the Eisenberg Corporation. No part of the proceeds of the check for $58,299.21 were paid on account of any of the labor and material bills of which the plaintiff bank had taken assignments.

The total possible liability of the surety for labor and material bills on this contract including the claims assigned to the two banks as above set forth is $78,209.34 made up as follows:

| | |
|---|---|
| Gross claim of Plaintiff for assignments in its hands....... | $29,912.36 |
| Less payment made by defendant Surety Co. ............ | 9,412.36* |
| Net claim of Plaintiff.......... | $20,500.00 |
| Claim of Northwestern National Bank for assignments held by it ...................... | 10,000.00 |
| Other claims paid by Defendant | 47,709.34 |
| | $78,209.34 |

The defendant alleges that the final payment to the Eisenberg Corporation constituted a trust fund for the benefit of unpaid laborers and materialmen and itself, that plaintiff had knowledge of the nature and source of this fund and was therefore bound to apply payments to it out of that

---

* This item is exclusive of interest in the sum of $259.93 which defendant paid to plaintiff, and is likewise exclusive of interest money in the sum of $917.76 which is the subject matter of defendant's counterclaim.

fund to those claims which it held as assignee of laborers and materialmen rather than to its unsecured claim against the Eisenberg Corporation. Therefore, defendant alleges that it has acquitted itself of payment of the assigned claims. Defendant by way of counterclaim demands a refund of $917.76 which was paid to plaintiff by the Eisenberg Corporation out of the final payment which plaintiff allegedly applied to interest on unsecured claims.

Defendant, Aetna Casualty & Surety Company in a third-party complaint against William Eisenberg and Sons, Inc., Israel Eisenberg and Harry Eisenberg alleges that under the contract of suretyship with the Eisenberg Corporation the latter agreed to indemnify it against all losses and in addition assigned all moneys resulting from the contract with the government for the erection of the dam at Beach City, that the three third-party defendants agreed to turn over checks issued by the government, but in disregard thereof defendants individually misapplied the final payment in the amount of $58,299.21, and that the third-party plaintiff has or will be obligated to pay unpaid labor and material bills in the sum of $78,209.34. Alternate judgments are requested against these defendants dependent upon the allowance of plaintiff's claim, but generally speaking judgment is sought against William Eisenberg & Sons, Inc. in the sum of $78,209.34 based on the indemnity agreement and judgment is also sought against the individuals, Harry and Israel Eisenberg for $58,299.21 for breach of the agreement to turn over payments to the Eisenberg Corporation by the government.

The third-party defendants deny that there was an agreement between them and the third-party plaintiff to turn over checks under the contract as alleged in the third-party complaint.

The case of Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822, involved a controversy between rival claimants to moneys paid by the government pursuant to a building contract, the one claim being founded on an assignment by the contractor to the surety for the benefit of materialmen and laborers; the other on a power of attorney later than the assignment which was given by the contractor to a creditor as security for a loan. The claimant under the power of attorney represented the surety as its agent when the suretyship agreement was made with the contractor, and, therefore, was familiar with the assignment clause of the contract for the benefit of laborers and materialmen. The Supreme Court held that an equitable lien arose from the assignment in favor of the surety and entitled it to have the moneys received by the contractor from the government applied to the satisfaction of the claims of laborers and materialmen, and that this equity was superior to the claim of one who with notice had lent money to the contractor, collected the deferred payments from the government and applied them to his loan. Cf. Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Exchange State Bank v. Federal Surety Co., 8 Cir., 28 F.2d 485.

In the case of Grover v. Board of Ed. of Franklin Tp., 102 N.J.Eq. 415, 141 A. 81, affirmed 104 N.J.Eq. 197, 144 A. 918, the complainant furnished materials to a contractor in erection of a public building, and applied payments from the contractor to an open, general account with knowledge of the source of the payments, and sought to recover for the materials furnished. The surety on the contractor's bond argued that in such case complainant could not apply the payments to the open, general account. The court observed that a debtor is ordinarily able to prefer one creditor to another although there be a surety for one of the debts. Therein, the contractor had made an assignment of future payments to the surety in his application to it for his bond, conditioned upon his failure to make payments under his contract. The assignment had not become operative at the time payments were made to complainant, because he had not yet defaulted. Hence, the court held that the surety had not acquired control over the payment and was of the opinion that the money used by the contractor in paying complainant was so far his own that it would be necessary for the surety to protect itself by securing joint control over payments to him in order to secure proper application to claimants for labor and material; otherwise, the general rules of application of payment between debtor and creditor remained intact, and the application of the payments to the open, general account was held proper.

In the instant case we believe plaintiff had knowledge of the source of the pay-

ment which it applied to its general account. However, there is no evidence to show that it knew of the assignment of payments by the Eisenberg Corporation to the surety contained in the application for the bond or of the agreement of the third-party defendants to turn over checks to the surety. The facts of the instant case are, therefore, distinguishable from those in the case of Martin v. National Surety Co., supra, since knowledge of the prior assignment by the subsequent assignee was the controlling point therein.

The case is also readily distinguishable from those cases involving rival claims to a fund owing a contractor asserted on the one hand by the contractor's surety based on subrogation, the surety having fulfilled the condition of his undertaking, and on the other hand, a claim of a general creditor holding an assignment from the contractor of funds to become due under his contract. Henningsen v. United States Fidelity & Guaranty Co., supra; Prairie State Bank v. United States, supra, Exchange State Bank v. Federal Surety Co., supra. The differentiation lies in the fact that herein the fund owing to the contractor has actually been disbursed, and the question revolves around the proper application of the disbursement by the creditor of the contractor.

■ With regard to the application of the disbursement the federal rule does not permit a laborer or materialman to apply payments from the contractor to a general account when he has knowledge of the source of payments made to him. R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 130 A.L.R. 192, United States v. Johnson, Smathers & Rollins, 4 Cir., 67 F.2d 121. The rule established in the State of New Jersey in the case of Grover v. Board of Ed. of Franklin Tp., supra, does permit such an application even when the laborer or materialman has knowledge of the source of payment. See Revised Statutes of New Jersey 1937, 2 :60–212, N.J.S.A. 2 :60–212, for statutory amendment to this holding (immaterial herein) restricting application of money paid by the state and its subdivisions pursuant to contracts for public service. American Lumbermans' Mut. Cas. Co. v. Bradley Construction Co., 127 N.J.Eq. 500, 13 A.2d 783.

■ The problem, then, is which rule is applicable, that of the state or that applied in the federal courts. Since suit is not brought upon the bond and under the Heard Act, 40 U.S.C.A. § 270, but upon an independent undertaking of the defendant running directly to the plaintiff and providing that the "situs of this guaranty is New Jersey and shall be construed under the laws of said state", we believe we are bound by the case of Grover v. Board of Ed. of Franklin Tp., supra. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

■ The decision in the case of Grover v. Board of Ed. of Franklin Tp. was based upon the fact that the moment the money was paid to the contractor it became and was his own money to the extent that a creditor had the right to apply payments made to it by him to a general, open account. In this case the surety manifested a desire to protect itself by securing control of the fund owing William Eisenberg & Sons, Inc., but it never actually accomplished this purpose. This failure was held fatal in the case of Grover v. Board of Ed. of Franklin Tp., and for the same reason is fatal here. Accordingly, the relief sought in the complaint is granted. It follows that if there had been a payment of $917.76 which is the subject of the counterclaim of defendant, it is not recoverable. Moreover, proof of this payment is lacking, and the counterclaim will be dismissed.

■ In the action by the surety against the third-party defendants the latter have defaulted on final argument of their case on brief. The assignment of deferred payments and retained percentages in the application to the surety for the bond supra by Harry and Israel Eisenberg on behalf of the Eisenberg Corporation as well as the general rules applicable to agreements of surety establish the right of the third-party plaintiff to reimbursement. Harry and Israel Eisenberg constituted the conduit through which the Eisenberg Corporation conducted its business, and the third-party plaintiff seeks to hold them liable for failure to turn over the final payment of $58,299.21. The officers of the surety testified that Harry and Israel Eisenberg promised in November, 1937, to endorse to the Aetna Casualty and Surety Company future payments from the government. Both Harry and Israel Eisenberg deny that they ever made this promise. On this problem of veracity we believe the witnesses offered by the surety. This conclusion is buttressed by the fact that on December 11, 1937 the semi-final payment to the Eisenberg Corporation in the amount of $15,924.17 was delivered to the surety by Harry and Israel

Eisenberg. The circumstances attendant upon this transaction were out of the ordinary and have every symptom of a prearranged plan for the distribution of future payments. Therefore, failure on the part of Israel and Harry Eisenberg to place the final payment of $58,299.21 in the proper channel renders them personally liable. Rose v. Bernhardt, 107 N.J.L. 501, 153 A. 609; Reliable Woodworking Co. v. Lindeman, 105 N.J.L. 121, 143 A. 333.

Orders for judgments will be taken accordingly.