GREENVILLE SAV. BANK et al. v. LAWRENCE et al.

(Circuit Court of Appeals, Fourth Circuit. November 10, 1896.)

No. 166.

1. GOVERNMENT CONTRACTS—ASSIGNMENTS OF CLAIM—ACCEPTANCE.
 Under Rev. St. §§ 3477, 3737, a person having a contract with the United States cannot transfer or assign any part of the money coming to him thereunder so as to affect any one but himself, and the acceptance by a disbursing agent of the United States of an order upon such fund has no validity against third persons.

2. SAME.
 Where, in a contract for the erection of a public building, the United States reserves the right to withhold a part of the money in case the contractor fails to pay claims for material and labor, the contractor cannot, by an assignment of moneys so withheld, give the assignee any standing to participate in the fund, until all labor and material claims have been paid.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This was an action by James R. Lawrence against the United States to enforce payment of a balance of $7,601, withheld under a contract for building a courthouse and post office, in favor of persons who had furnished labor and material. The Greenwood Savings Bank and George A. Norwood filed their claims against this fund, which, by order of the circuit court, were disallowed, and they appealed.

James R. Lawrence contracted with the United States to build a courthouse and post office at Greenville, S. C. The building was completed and accepted August 2, 1893, and of the contract price there remained unpaid $7,601. The contract between the United States and Lawrence contained this stipulation: "And it is further understood and agreed by and between the parties hereto that it shall be a right and privilege of the said party of the first part to withhold any portion of the sum of money to be paid to said party of the second part under the provisions of this contract in the event of the failure of the said party of the second part to promptly make payment to all persons who may supply him with labor and materials in the prosecution and completion of the work herein provided for." Lawrence failed to pay all the persons who supplied him with materials, and these unpaid creditors filed their claims in the office of the treasurer of the United States to the aggregate amount of nearly $10,000. Lawrence made demand on the United States for the balance due him, but the treasury department refused to pay him until he had adjusted these claims for material. The matter then so stood that the government would not pay the balance until the material men were settled with, and Lawrence was unable to pay them because he could not get the balance due him. Thereupon Lawrence sued the United States in the circuit court of the United States for the district of South Carolina, under the act of March 3, 1887. He stated in his petition all the foregoing facts, and asked the court to take jurisdiction of the matter. He alleged that some of the claims filed in the treasury department were just, and should be paid; that some were owing in part only, and others were unjust, and wholly denied by him; and that there were other meritorious claims outstanding arising out of the erection of the building which were not included among those filed in the treasury department, and for which some provision should be made if the fund was to be distributed among those holding valid claims against him arising out of the erection of the building; that it was only upon these conditions that he could recover the sum justly due to him under the construction put upon the contract by the officers of the United States. He prayed for judgment against the United States for $7,601; that the court would, by

proper notice, bring into court all persons having claims of the nature set forth in his petition, requiring them to prove their claims before a special master; and that the court would distribute the fund among the claims so established, and, if there was any overplus, direct that be paid to him; and for other relief. The United States answered, admitting that it withheld the sum claimed in the interest of such persons as had furnished labor and materials for the construction of the building, and for no other purpose; and that it was ready to pay the money to such persons as might be found entitled to receive it; and prayed that the court would, by suitable orders, bring the claimants of the fund into court, and ascertain their respective rights, and distribute the fund. The court thereupon appointed a special master, and directed him to notify the claimants, and ascertain the claims and report. Upon final hearing the circuit court directed that certain unpaid claims for materials furnished reported by the master, amounting to over $10,000, should be paid pro rata; and that a claim of the Greenville Savings Bank for $4,-098.86, and a claim of G. A. Norwood for $768.64, should be disallowed. 71 Fed. 228. These two claimants whose claims were disallowed have appealed.

The claim of the Greenville Savings Bank arose in this way: Lawrence did not have the cash to pay his current pay rolls and bills for materials, and he arranged to get advances from the Greenville Savings Bank. He would sign an order directing Mr. Nichols, the disbursing agent of the United States, to pay to the bank the next amount coming to him on account of his contract. When the necessary vouchers for work done were in proper shape, and Lawrence was entitled to a payment, Nichols would sign a check in favor of Lawrence, and give it to the bank. Lawrence would indorse the check to the bank, and it would get the money. This continued for some six months, until on November 6, 1891, Lawrence gave the bank an order for the balance due on the completion of the building, on which Nichols wrote: "Accepted. Frank Nichols, Disbursing Agent." By virtue of this paper the bank claims to be the assignee of the balance admitted to be due by the United States. It also claimed that, as it appears that the money advanced by it was intended to be used and was used by Lawrence in paying labor and material for the construction of the building, it at least has the same equity as the material men to share in the fund.

The claim of Norwood arose in this way: One Jenkins borrowed of Norwood $100, and as collateral indorsed to him an order in his favor from Lawrence on the Greenville Savings Bank, to be paid out of any surplus of the money due on Lawrence's contract, which the bank should collect, remaining after paying the bank's claim against Lawrence. Another item of Norwood's claim was an order for $668.64 given by Lawrence in favor of Wm. E. Springer & Co. on the supervising agent of the treasury department, payable out of money due on his contract, and which had been indorsed over to Norwood.

H. J. Haynsworth (of Haynsworth & Parker), for appellants.

Julius H. Heyward and J. C. Jefferies (T. L. & W. H. Donaldson, on the briefs), for appellees.

Before GOFF, Circuit Judge, and HUGHES and MORRIS, District Judges.

MORRIS, District Judge (after stating the facts). The parties to this controversy being all anxious that some tribunal should assume jurisdiction and adjudicate their respective claims, no question of jurisdiction, procedure, or right of appeal has been raised, and we assume that the case is rightly before us on appeal. The contention of the appellants that Lawrence, the contractor, could assign and transfer the money coming to him from the United States under his contract so as to affect any one but himself cannot be maintained in the face of sections 3477 and 3737 of the Revised Statutes; and Nichols, who was a mere disbursing agent of the United States,

manifestly had no authority to do anything but to pay over the money when it was due. His acceptance of orders on the fund which he expected to disburse was of no validity. U. S. v. Gillis, 95 U. S. 407; Spofford v. Kirk, 97 U. S. 484; McKnight v. U. S., 98 U. S. 179. And, even without the prohibition of sections 3477 and 3737, Lawrence could make no assignment which would abrogate the contract. By the contract the United States reserved the right to withhold the payments under it if Lawrence failed to pay promptly those who furnished labor or materials. The reason of this provision is apparent. Against all buildings except those of the United States and the states and the governmental agencies acting under them, by the statutes of nearly all states, those who furnish labor and materials are given liens, but contractors with the United States for the erection of its buildings may collect the contract price, and let those who have furnished the labor and materials go unpaid. This gives dishonest or reckless contractors the opportunity to underbid honest ones, and subjects congress to appeals to its generosity to make good the losses of those whose labor or materials have erected public buildings. It is, therefore, in its own interest, as well as in the interest of honest dealing, that stipulations like the one in question are inserted in government contracts, and the contractor cannot abrogate them. The fund in this case was withheld by the treasury department under this stipulation of the contract, as the United States alleges in its answer, in the interest of such persons as furnished labor and materials used in the construction of said building, and for no other purpose, and prays the court to ascertain the rights of the claimants of the fund and to distribute it. As the correctness of some of the labor and material claims was disputed by Lawrence, and he alleged there might be others not filed with the treasury department, the court, by appropriate methods, called in all claimants, and required them to prove their claims. Obviously, as against labor and material claims, the assignees of Lawrence could have no standing to participate in the fund. It was a fund withheld under the stipulation of the contract for a particular class of creditors, to which mere assignees of the fund do not belong, and the rights of such assignees, if they have any, must be postponed until the creditors who have a special equity are paid.

It is further urged that, as the money advanced by the bank and Mr. Norwood was loaned to be used, and was used, by Lawrence in most part to pay current labor and material claims during the progress of the building, they should be subrogated to the rights which those persons would have had if they had not been paid. The proof shows that the loans were made by the bank to Lawrence on his promissory notes in the ordinary course of business. The amounts were put to his credit, and he drew the money as he chose. He stated the purpose for which he needed the loans, and he agreed to secure them by securing to the bank, as far as he could, the payments he expected from the government. The bank did not pay the laborers or the material men. Lawrence paid them, and extinguished their claims. There was no intention to keep the claims alive for the protection of the bank. The bank relied on the expectation of

getting the government checks, and being paid by Lawrence out of them, and not upon any agreement that the labor and material claims should be assigned to it.

In Sheldon on Subrogation it is said (section 240):

"The doctrine of subrogation is not upheld for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own."

In Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, the foregoing statement of the law is approved, and the whole subject ably discussed by Mr. Justice Miller, and the proposition announced that there is no subrogation in favor of one who, being under no obligation to do so, furnishes money for the payment of a debt to which he is a stranger. Moreover, the doctrine of subrogation is of equitable origin, and is never allowed to interfere with equal equities in third parties growing out of express contract. In the present case the class protected by the contract are those whom Lawrence has failed to pay, and it would certainly be contrary to that stipulation to allow the claims of those whom he has paid to be set up in favor of one who loaned him money without any agreement for substitution or subrogation. We cannot see that the circuit court could have decided otherwise than it did, and the decree is affirmed.