## RIVERVIEW STATE BANK v. WENTZ et al.*

Circuit Court of Appeals, Eighth Circuit.
July 23, 1929.

No. 8111.

John Embry, of Oklahoma City, Okl. (Charles E. Johnson and Raymond A. Tolbert, both of Oklahoma City, Okl., on the brief), for appellant.

Frank E. Lee, of Oklahoma City, Okl. (Rittenhouse, Lee, Webster & Rittenhouse, of Oklahoma City, Okl., on the brief), for appellees.

Before STONE, Circuit Judge, and FARIS and SYMES, District Judges.

FARIS, District Judge. Plaintiff bank, herein appellant, as assignee of the Sam Ward Paving Company, a copartnership, sued the members of the Oklahoma highway commission, the United States Fidelity & Guaranty Company, R. L. Davis, and one Melone, as the administrator of Ward, deceased, and being cast below, has brought the case here for review.

The facts are few and fairly simple: The Sam Ward Paving Company, a partnership, composed of Sam Ward (now deceased) and defendant Davis, had a contract with the Oklahoma highway commission for the construction of certain public highways in Okla-

*Rehearing denied October 3, 1929.

homa. Under apposite state statutes, the Sam Ward Paving Company was required to make and execute, and did on the 4th day of April, 1925, make and execute, a bond to the state of Oklahoma, with the United States Fidelity & Guaranty Company as surety, conditioned that said obligors should "pay all indebtedness incurred for all labor and material furnished in the construction of the above described project," which project was definitely described in the contract. This contract was made and executed on the same day as was the above bond. Also on the same day the Sam Ward Paving Company executed another bond to the same obligee, with the same surety, which bond was conditioned for the completion of the work in accordance with the contract and specifications. The latter bond cuts a figure here which is incidental and a matter of argument only, since it is conceded that the United States Fidelity & Guaranty Company caused full completion of the work embraced in the contract, or at least such work was fully completed.

Under this contract, payment was made to the contractors, the Sam Ward Paving Company, upon monthly estimates, less perhaps 10 per cent. withheld pursuant to the contract. As a result of withholding such percentages, there remained in the hands of the Oklahoma highway commission, when the project was fully finished, the sum of $12,428.10. This sum is the money here in controversy. Upon the institution of this action, this money was tendered into court by the Oklahoma highway commission, which agreed to pay such money in accordance with such judgment as might be rendered by the court. At least so the agreed facts recite, though no such affirmative tender is printed in the record.

The claim of appellee United States Fidelity & Guaranty Company to this money is bottomed on assignments to it of certain claims of materialmen aggregating more than the sum in dispute. The claim of appellant, Riverview State Bank, is bottomed on certain notes made to it by the Sam Ward Paving Company, also aggregating more than the sum in dispute, which notes were secured by an assignment, dated April 17, 1925, whereby the Sam Ward Paving Company assigned to plaintiff bank the "proceeds from estimates to become due said contractor under the terms and provisions of said contract." This assignment also directed the Oklahoma state highway commission to issue all checks and vouchers to plaintiff bank. The Oklahoma highway commission acknowledged receipt of this assignment on the 21st day of April, 1925. The consideration, for the notes made by the Sam Ward Paving Company to plaintiff bank, was for moneys advanced or loaned by it to the paving company for use in the prosecution of the project, and such moneys were so used.

The sole question in controversy here is whether the equity of the surety, the United States Fidelity & Guaranty Company (hereinafter called simply the guaranty company), is or is not, upon the facts and the applicable law, superior to that of the Riverview State Bank, hereinafter called simply the bank. Many errors are assigned, but all of them resolve themselves, in the last analysis, into the above query. Stated still another way, Is the claim of the bank under the assignment to it superior in equity to the claim of the guaranty company, the surety on the materialmen's bond, and as assignee of such materialmen, whose claims it paid in an amount exceeding that here in dispute? The appellant bank contends that it is, and the appellee guaranty company, very naturally and as was to be expected, contends contra.

As forecast, apposite statutes of the state of Oklahoma require that a contractor, such as was the Ward Paving Company, shall execute two bonds; one to secure to the state the completion of the work in accordance with the contract, and the other to secure laborers and materialmen in the payment to them of money due for labor and materials used in doing the work. Section 12, State Highway Commission Act of March 14, 1924, S. L. of Okl. 1923–24, p. 51, c. 48; section 7486, C. O. S. 1921. Obviously, the state of Oklahoma is directly and financially interested in the bond first mentioned. But, while under the statute the state is named as obligee therein, it has no financial interest in the bond last mentioned. It merely requires such bond in order that the laborers and materialmen, having no enforceable lien against the work itself, may yet have protection and be enabled to collect the money due them for their labor and materials. Neither of the two statutes above cited, and which constitute the legal reasons for the making of these two bonds, deals with any question of subrogation, or with the comparative superiority of the equities existing between a lender of money used in the work and a materialman who furnished materials likewise used in the work. The claim of the bank is bottomed here wholly upon an assignment. The claim of the guaranty company is bottomed upon an assignment from certain materialmen, and also upon the well-known doctrine of subro-

gation. The existing diversity of opinion touching whether an actual assignment is a condition precedent to the invocation of the doctrine of subrogation need not therefore be considered, for upon either view the guaranty company is subrogated in both the ordinary and legal senses; that is, it is substituted for, or stands in the shoes of, the materialmen.

A few cases from states other than Oklahoma are called to our attention which hold, as appellant contends, that under similar statutes the bank has a superior equity. But we need not, we are of opinion, consider whether this is or is not a correct construction of the rulings cited. Obviously there is nothing contained in the local statutes above cited bearing upon the question of the comparative equities as between the bank here and the guaranty company. All that these statutes say that is relevant here is that the two bonds which were here made must be made. The question of comparative superiority of opposed equities is left to and is relegable to the general law.

The provision in the contract which permits, if the Oklahoma highway commission shall so elect, the holding of any balance due the contractor for the payment of labor and materialmen, clearly aids the bank here in no wise. All inferences to be deduced from this provision of the contract militate against the contention of the bank and not in its favor, since the Oklahoma highway commission has tendered the money in controversy into court to abide the judicial event. Lanstrum v. Zumwalt, 73 Mont. 502, 237 P. 205.

Absent a statute, and none has been called to our attention by the diligence of counsel, the decisive question before us is, we repeat, one of general law. The case of Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547, seems to us to be decisive of this question of general law above propounded.

Upon the categorical question whether a surety, which pays the claims of materialmen, has a superior equity in money in the hands of the owner of the work, as against a bank which lends money and secures it by an assignment of the moneys to be earned in performing the contract, the Supreme Court of the United States said: "Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation, but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money. Prairie State Bank v. United States, 164 U. S. 227 [17 S. Ct. 142, 41 L. Ed. 412]; Insurance Company v. Middleport, 124 U. S. 534 [8 S. Ct. 625, 31 L. Ed. 537]; Sheldon on Subrogation, § 240. See, also, United States Fidelity Co. v. [United States use of] Kenyon, 204 U. S. 349, 356, 357 [27 S. Ct. 381, 51 L. Ed. 516]." Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. loc. cit. 411, 28 S. Ct. 389, 52 L. Ed. 547.

The Henningsen Case, supra, arose upon facts apparently (and at least on principle) on all fours with the situation before us in the instant case. There a single statute (Act August 13, 1894, c. 280, 28 Stats. 278 [40 USCA § 270]) required a single bond to be given to the United States by a contractor for the doing of any public work, but with two conditions written therein; one condition whereof, was for the completion of the work in accordance with the contract, and the other condition was for the prompt payment to all persons supplying labor and materials in the prosecution of the work. The contract in question was for the construction of certain buildings at Ft. Lawton. The buildings were constructed in accordance with the terms of the contract; but the contractors failed to pay certain just and lawful claims for labor and materials. The liability to the materialmen of the United States Fidelity & Guaranty Company, there, as here, a party, having been established, it brought an action to restrain one Spencer, as trustee for the National Bank of Commerce, from collecting or receiving the balance due on said contract, which balance was then in the hands of the quartermaster. Judgment went below for the guaranty company and, in affirming the case, the Supreme Court ruled that the equity of a surety who pays the claims of materialmen, or the right to be subrogated to the claims of the materialmen in such case, is superior to the equity of a bank which lends money to the contractor and secures such loan by an assignment of money due and to become due for work done on the contract. See, also, State ex rel. Surety Co. v. Schlesinger, 114 Ohio St. 323, 151 N. E. 177, 45 A. L. R. 371, and note; Lacy v. Maryland Casualty Co. (C. C. A.) 32 F.(2d) 48; Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412.

Obviously, it makes no difference in the law that there was but one statute, one bond and one surety, in the Henningsen Case; while here there are two statutes, two bonds, and but a single surety. The bond here for completion of the work is nowise directly in

question or in issue. The case would be the same if the latter bond never had been executed. Nothing seems more obvious or plainer than that the mere adventitious fact that the guaranty company happens to be the surety on both of the bonds made in this case cuts no earthly figure in the law of the case.

Without more, and without deeming it necessary further to discuss the effect of the action of the Oklahoma highway commission in paying the fund in controversy into court, as evincing an election to hold this money for the materialmen, as by the contract was permitted, we are of opinion that the rights of the bank, which it got by assignment, were inferior to the rights of the guaranty company, which it got by subrogation and by assignment, and that the latter should prevail.

It results that the case was correctly ruled below, and should, with costs, be affirmed, which accordingly we order.

SYMES, District Judge (dissenting). I regret I am unable to agree with the opinion of the court in this case.

Appellant's proposition may be stated as follows: Appellant contends that the funds in the hands of the highway commission were not held to secure the indebtedness due the materialmen, whose claims were paid by the appellees; that neither the plaintiff, the state, nor the highway commission were in any way liable to materialmen, who were mere general creditors of the contractor; that the latter had the right to assign, and the state to pay, these percentages to the appellant upon completion of the contract, in accordance with its terms.

In answer to this, the appellees refer to the clause in the contract giving the commission, if it elects, the right to compel payment of the materialmen, or to pay them itself, etc.; that the appellant took its assignment subject to the provisions of the contract and construction bond, and could take no greater right than its assignor, the contractor, had; that the commission had the right to hold the balance due for the benefit of the materialmen.

The argument does not go far enough. It is not alleged that the state highway commission made an election such as appellees refer to, nor that it held back final payment until the contractor settled with the materialmen. On the contrary, the stipulation of facts states that the contract was fully performed, and this balance earned by the contractor, and that the commission issued its final certificate to the contractor. This was equivalent to a waiver of the clause referred

to, and relieved the appellees from any liability on the construction bond, leaving only the question of their rights and liabilities under the statutory bond. This provision giving the state the right to pay materialmen, if it so elected, was for its benefit, not the surety, and the appellees cannot take anything under it.

The statute required a bond for the protection of materialmen. This is a recognition that the commission, and this fund in its hands, are not in any way subject to their claims. Being creditors of the contractor, their sole remedy was against him and his surety, and the latter, after payment, succeeded to their rights, no more, no less. This bond was intended as a substitute for any rights the materialmen might have against the commission or the fund from which the contractor is paid, and relieved them of the necessity of looking to the state or the contractor. It gives them an adequate remedy at law, and therefore they have no right to equitable relief.

Numerous authorities are cited in the briefs, only a few of which are in point. In most of the cases cited only one bond was involved, given to secure both the performance of the contract and payment of materialmen as well. A well-considered case is that of Adamson v. Paonessa, 180 Cal. 157, 179 P. 880, holding that payment by the surety of debts of a contractor with the city, pursuant to its obligation, works a subrogation in its favor to any rights possessed by those whose claims it paid, but gives no further rights. Under facts similar to the case at bar, the court held that parties furnishing materials to a contractor doing work for the city must look solely to the contractor and the bond which the statute required him to furnish, and not to the city. The court further points out the difference between the instant case and the line of authorities cited by appellee, in that in those decisions, either by statute or the terms of the contract itself, a fund was in effect reserved for the benefit of materialmen and laborers, whom the contractor might fail to pay; but that, in the absence of such a proviso or fund, the materialmen have no claim against the city—distinguishing Prairie State Bank v. U. S., 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412.

In City of Topeka v. Federal Union Surety Co., 213 F. 958, this court held that, where the surety is engaged in the business of becoming a surety in consideration of premiums supposed to be based on the amount of the risk, such contracts are construed most strongly against the surety. There the surety

company executed a bond to the state, conditioned for the payment of labor and material on a paving contract on the conclusion of which there was a sum due the contractor from the city, and also sums due from the contractor to the subcontractor, which the surety company had paid. The contractor thereafter sued the city, which pleaded as a set-off a prior indebtedness from the contractor to it, exceeding the amount of his claim. The city recovered judgment against him thereon. This court held that, as there being no statutory lien in favor of the subcontractor against the city to which the surety could be subrogated, it could not enforce an equitable lien in their behalf on funds in the hands of the city.

In Exchange State Bank v. Federal Surety Co. (C. C. A.) 28 F.(2d) 485, cited, the bond was conditioned for the payment of all indebtedness incurred for labor, materials, etc., so the case is not in point.

Reinhart & Donovan Co. v. Board of Commissioners et al. is an Oklahoma case, 70 Okl. 127, 173 P. 848. It holds that materialmen furnishing material to contractors erecting a county courthouse are chargeable with knowledge of the statutory duty of the contractor to give the statutory bond; that, in the absence from the statute of express terms authorizing it, there are no liens or claims on the buildings, and materialmen could not garnishee funds in the hands of the state due contractors for the erection of public buildings, "as no right or claim which they had against the contractors could in any manner be enforced by them as against funds of the county or board of county commissioners." It of course followed that a surety could have no better claim.

The Oklahoma statute gives materialmen no claim to percentages retained by public authorities for their protection. The most that the appellee can claim here is that the commission might, if it so elected, deduct from funds due the contractor amounts due for material, but no duty was imposed upon the commission so to do. Instead it accepted the contractor's assignment to the bank and permitted the latter to supply funds with which to complete the contract. The contract, according to the findings of the commission and its engineers, having been fully completed, the balance due was payable to the appellant as assignee.

In dealing with the materialmen, the surety company was an entire stranger to itself as surety on the construction bond, out of which no liability arose. The Henningsen Case, 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed.

547, involved merely a federal statute, and does not purport to be an authority on the subject or suretyship generally. The court in that case points out that the stipulation of the bond was not merely that the contractor should construct the building or road as in the case at bar, but that he should pay promptly all labor and material claims as well.

The appellees have no rights against the state or the fund, for the very good reason that the materialmen had none.