## FIDELITY NAT. BANK OF OKLAHOMA CITY v. UNITED STATES CASUALTY CO.

No. 30106. Nov. 17, 1942.

*131 P. 2d 75.*

Cruce, Satterfield & Grigsby, of Oklahoma City, for plaintiff in error.

Maurice M. Thomas, of Oklahoma City, for defendant in error.

OSBORN, J. The Fidelity National Bank of Oklahoma City, hereinafter referred to as defendant, appeals from an order of the district court of Oklahoma county granting a new trial. There is no dispute as to the facts. It is conceded that a question of law only is involved and is properly presented in this appeal.

The cause was instituted by the United States Casualty Company, hereinafter referred to as plaintiff, against the above-named bank, the State Highway Commission, R. S. Smith, doing business as Smith Construction Company, and various other parties. It was sought to enjoin the Highway Commission from paying certain monies in its possession to the defendant bank and to establish a prior right to said funds. The cause was tried to the court and judgment was entered in favor of defendant bank, but a motion for new trial was filed by plaintiff, and after consideration by the court a new trial was granted, and defendant bank has appealed.

The appeal involves two cases which were consolidated in the trial court. Due to the similarity of the issues involved in said cases it will be necessary to refer to but one of them. We shall state the facts involved in cause numbered 98968 in district court.

On July 25, 1938, defendant Smith entered into a contract with the State Highway Commission to furnish the materials and perform the labor in connection with a landscaping and road widening improvement on U. S. Highway No. 62 in Okmulgee county described as Project No. 580-A. The contract price was $5,058,38. Plaintiff was the surety upon the two bonds required by statute, the first being the bond required by 61 Okla. St. Ann. § 1, § 10983, O. S. 1931, to guarantee payment of labor and materials, and the second being the bond required by 69 Okla. St. Ann. § 48, ch. 22, § 2, Session Laws 1933, to insure the completion of the work in accordance with the contract. The above bonds were executed on August 9, 1938.

It appears that the defendant Fidelity National Bank had financed defendant

Smith in the construction of this and various other projects, and that he was indebted to said bank for funds previously advanced in the sum of $16,176.-.61, which funds were used in the operation of the project involved herein and other projects without control by the bank; that on October 5, 1938, defendant Smith obtained a loan from the bank and as security executed an assignment to said bank of all funds accruing to said contractor under the contract with the Highway Commission, said assignment being duly filed with the Highway Commission and accepted by them under date of October 19, 1938, and thereafter the estimates of money due on the project under the contract were paid to the bank, except as hereinafter noted. The project was completed and accepted by the State Highway Commission on April 11, 1939. It appears that there were certain claims for material furnished on said project which were not paid by the contractor amounting to a total of $563.78. The plaintiff surety company paid said claims and took assignments thereof from the various creditors of defendant Smith.

The contract between the Highway Commission and defendant Smith provided that it was subject to certain standard specifications of the Highway Commission. Section 108.02 of the standard specifications provides:

"Scope of Payment. The Contractor shall accept the compensation, as herein provided, in full payment for furnishing all materials, equipment, labor, tools, and incidentals necessary to complete the work and for performing all work contemplated and embraced under the contract; also for loss of damage arising from the nature of the work, or from the action of the elements, or from any unforeseen difficulties which may be encountered during the prosecution of the work until the final acceptance by the Engineer, and for all risks of every description incurred in consequence of the suspension or discontinuance of the work as herein specified, and for any infringement of patent, trade-mark, or copyright; and for completing the work according to the plans and specifications. Neither the payment of any estimate or of any retained percentage shall relieve the contractor of any obligation to make good any defective work or material.

"No moneys, payable under the contract, or any part thereof, except the estimate for the first month or period, shall become due and payable if the Commission so elects, until the Contractor shall satisfy the said Commission that he has fully settled or paid for all materials and equipment used in or upon the work and labor done in connection therewith, and the Commission, if it so elects, may pay any or all such bills, wholly or in part and deduct the amount or amounts so paid from any monthly or final estimate, excepting the first estimate."

Section 108.06 provides, in part, as follows:

"Partial Payments. The Engineer will make written estimates of the materials complete in place and the amount of work performed in accordance with the contract during the current period of time between estimates and the value thereof figured at the contract unit prices. From the total of the estimate so ascertained will be deducted an amount equivalent to ten (10) per cent of the whole, to be retained by the Commission until after the completion of the entire contract in an acceptable manner, and the balance of the sum equivalent to ninety (90) per cent of the whole, shall be verified by the Engineer for payment . . . ."

It is shown that under the provisions of the latter section the Highway Commission had retained from the amount due defendant Smith the sum of $501.24. Defendant bank contends that it is entitled to said funds by virtue of its assignments, while plaintiff contends that by virtue of the contractual provisions above referred to it is subrogated in equity to the claims of the materialmen paid by it and has an equitable lien upon said funds in the hands of the Highway Commission.

Although the exact question is new in this jurisdiction, it has received considerable attention from the courts in other jurisdictions. A number of the authorities are collected in an annotation in 76 A.L.R. 917. The majority rule is stated by the annotator as follows:

"It is generally held that a stipulation for the retention of a certain percentage of the consideration for the protection of materialmen, workmen, etc., is in part an indemnity for a surety who guarantees the performance of the contract by the contractor, and that it raises an equity in his favor in the fund thus created, or to be created, to the extent he suffers loss, which takes precedence over assignments of the funds by the contractor."

An examination of some of the earlier federal decisions, such as Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412, and Henningsen v. United States F. & G. Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547, discloses that, although these authorities contain some of the elements of decision, they do not fully announce all of the applicable principles. See Martin v. Natl. Surety Co. (C.C.A. 8th) 85 F. 2d 135. It further appears that the issues of law and fact involved in earlier federal cases are not identical with the issues involved here. In subsequent federal decisions the controlling principles are recognized. In the case of Riverview State Bank v. Wentz (C.C.A. 8th) 34 F. 2d 419, the court considered a fact situation practically identical with that presented here, and also gave consideration to the statutes which are involved in the instant case. The holding of the court is as follows:

"Highway contractor's surety, paying claims of materialmen and taking assignments of their claims, became subrogated to rights of materialmen.

"Rights of highway contractor's surety, paying materialmen's claims and taking assignments of claims, to funds due contractor, held superior to rights of bank lending money to contractor and securing loan by an assignment of money due and to become due contractor for work done, notwithstanding contract provided that highway commission, if it so elected, could hold any balance due contractor for payment of labor and materialmen, where highway commission paid fund into court."

In the case of Martin v. National Surety Co., supra, it was said:

"In United States Fidelity & Guaranty Co. v. Sweeney et al., 80 F. 2d 235, 238, Judge Gardner, in delivering the opinion of this court, said: 'Laborers and materialmen, however, have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors. Belknap Hardware & Mfg. Co. v. Ohio River Contract Co. (C.C.A. 6) 271 F. 144. The statutory requirement of a bond to protect them is not inconsistent with such equitable rights. American Surety Co. v. Westinghouse Elec. Mfg. Co. (C.C.A. 5) 75 F. 2d 377. There is a recognized equitable right of unpaid furnishers of labor or materials to such part of the contract price as may remain in the possession of the government after the completion of the work by the contractor. Riverview State Bank v. Wentz (C.C.A. 8) 34 F. 2d 419; Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; Farmers' Bank v. Hayes (C.C.A. 6) 58 F. 2d 34; American Surety Co. v. Westinghouse Elec. Mfg. Co. (C.C.A. 5) 75 F. 2d 377. Appellant was bound by contract to pay the claims for labor and material and upon paying these claims it was entitled to be subrogated to the superior equities of the laborers and materialmen, and when payment was made its rights related back to the time of making the contracts.' "

The defendant was bound to know of the terms and conditions of the contract between the Highway Commission and the contractor. It was bound to take notice of the fact that the commission was authorized to withhold a portion of the contract price until it was satisfied that the contractor had paid for all materials and equipment used, or work and labor done, in connection with the performance of the contract, and that the commission might elect to pay any or all of such bills and deduct the amount thereof from the contract price. It was also bound to know of the terms of the bond fixing liability upon the surety to pay the claims of workmen and materialmen if they were not paid by the contractor. Haverstick v. Sheirich, 304 Pa. 437, 155 A. 859, 76 A.L.R. 912; Derby v. United States F. & G. Co., 87 Ore. 34, 169 P. 500; Canton Exchange Bank v. Yazoo County, 144

Miss. 579, 109 So. 1. Nothing that the bank could do could alter the status of the parties fixed by the terms of the contract and the bond of the surety. The contractor and the bank could not create a lien in favor of the bank upon the reserved funds and make it paramount to the prior rights of the surety. Wasco County v. New England Equitable Ins. Co., 88 Ore. 465, 172 P. 126, L.R.A. 1918D, 732, Ann. Cas. 1918E, 656.

It is noted that under the provisions of the contract and specifications the Highway Commission was not bound to retain any portion of the contract price, but it elected to retain the sum of $521.24. The surety company discharged the obligations of the contractor to the materialmen and thereupon became subrogated to any equitable rights of the materialmen in the funds so retained, that is, "it is substituted for, or stands in the shoes of, the materialmen." Riverview State Bank v. Wentz, supra.

The conclusion of the authorities that the equitable doctrine of subrogation may be invoked in behalf of the surety is in harmony with the spirit and purpose of our statutes. 15 O. S. 1941 § 383 provides as follows:

"A surety is entitled to the benefit of every security for the performance of the principal obligation, held by the creditor or by a co-surety, at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not."

We therefore hold that the claim of the surety is superior to the claim of the bank.

Defendant bank relies in the main upon our decision in the case of Metropolitan Casualty Ins. Co. v. United Brick & Tile Co., 167 Okla., 402, 29 P. 2d 771. That case, in effect, was a contest between two surety companies who were sureties for a contractor upon two separate improvement projects in which the surety upon the contract for construction of the second project sought to enforce the application of funds derived from the contract for which it was surety to the indebtedness incurred in the performance of said contract. We held that a compensated corporate surety had no such right, folowing the great weight of authority upon that point. The surety company therein contended that it had a lien upon the proceeds of the contract for which it was surety by virtue of a provision of the contract to the effect that the city commission might retain moneys payable under the contract until satisfied that all bills for labor and material had been paid, or if it so elected, might pay any or all of such bills and deduct the amount so paid from the final estimate. We therein pointed out that the city had not seen fit to exercise the option so granted and that we were not dealing with funds in the hands of the city. The funds therein involved had been delivered to the contractor and by him disbursed to the payment of pre-existing indebtedness. It is thus clear that the issue of law presented in the instant case is not the issue determined by us in Metropolitan Casualty Ins. Co. v. United Brick & Tile Co., supra.

The cause is remanded, with directions to enter judgment in conformity with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., absent.