## STANDARD ACCIDENT INS. CO. v. UNITED STATES CAS. CO.

No. 31296. ·Dec. 23, 1947.

*188 P. 2d 204.*

Looney, Watts, Fenton & Eberle, of Oklahoma City, for plaintiff in error.

Pierce & Rucker and Clayton B. Pierce, all of Oklahoma City, and A.

M. Covington, of Tulsa, for defendant in error in cross-appeal.

GIBSON, J. Holbert Electric Company, a copartnership composed of P. A. Holbert and G. R. Holbert, hereinafter referred to as contractor, was engaged in the performance of three construction contracts. In each case performance and payment bonds were required and Standard Accident Insurance Company, a corporation, hereinafter referred to as surety, executed each of the bonds in that capacity. Each bond was conditioned that principal would pay all bills incurred for labor and material used in the performance of the contract. During the period said contractor was covered by two insurance policies issued by United States Casualty Company, a corporation, hereinafter referred to as plaintiff. One of the policies was a public liability policy, and the other what is designated as a standard workmen's compensation policy which had for its purpose protection of the insured for any and all claims arising under the Workmen's Compensation Law in the State of Oklahoma. The amount of the premiums on each policy was fixed on a payroll basis and to be arrived at by audit of the payrolls of the contractor covering period from beginning of the work to November 12, 1939, the expiration dates of the policies.

One of the projects was designated by the United States Rural Electrification Administration as "Oklahoma-25-Al-Rogers" and involved the construction of distribution lines for electric energy in Tulsa and neighboring counties under contract with the Verdigris Valley Electric Co-Operative, Inc. Another contract was with the city of Anadarko for the rebuilding of the distribution system of the city's electric light plant. And the other was with the A. & M. College at Stillwater.

The several projects were completed but the contractor failed to pay the premiums upon the insurance furnished by plaintiff and there was due and owning thereon a total of $7,882.86, consisting of $6,167.27 on the workmen's compensation policy and $1,715.59 on the public liability policy. The contractor further failed to pay divers obligations incurred for material purchased and used, which aggregated the sum of $27,741.21.

In pursuance of their rights so to do under the terms of the contracts. Verdigris Valley Electric Co-Operative, Inc., and the city of Anadarko each retained percentages of the contract price to be held until all bills were paid. The amount retained by the first named being $14,855, and that by the latter $693.79.

As part of the consideration for the execution by surety of said bonds, contractor entered into an agreement wherein it was agreed to indemnify surety against loss and assigned to surety all moneys, due contractor at the time of any breach or default by contractor of the terms of the bond. And, in compliance therewith, contractor, on or about June 20, 1940, assigned to surety all money due or to become due and payable to contractor under said contracts and other assets of said contractor and of the individual members thereof. Surety paid contractor's obligations for material in the amount of $27,741.21, owing on the Verdigris project and $6,190,855 owing on the Anadarko project, and made demands for payment of the retained funds which were refused. Such was the situation when plaintiff, on July 11, 1940, instituted the present action to which all persons in interest were made or became parties.

No personal judgment was sought against any of the contractees. At the time of filing the action the A. & M. College contract had been completed and it developed that there was no retained percentage. By order of court, on stipulation, Verdigris Valley Electric Co-Operative, Inc., and the city of Anadarko were permitted to disburse the funds without prejudice to the issues between the remaining parties and

the action dismissed as to them. Under the terms of the order the fund retained by city of Anadarko was paid to surety and of the fund retained by Verdigris Valley Co-Operative, Inc., $7,500 was paid into court and the remainder, $7,355, paid to said surety.

On the issues plaintiff sought personal judgment against contractor for $7,882.86, the aggregate of the premiums owing on both policies and judgment declaring that $6,167.27, the amount of premium on workmen's compensation policy, to be a lien upon both funds and prior to that of surety. Plaintiff also sought a personal judgment against surety for said aggregate amount of the premiums. Surety, on cross-petition, sought judgment declaring it to have a lien superior to any claim of plaintiff upon all of said funds by reason of its payment of materialmen's claims in excess of the amounts thereof.

The court decreed that plaintiff was entitled to a lien upon all of the assets of the contractor and of the individual members thereof and that such lien constituted a first and prior to lien upon the fund paid into court and directed payment thereof accordingly. It is from this finding and judgment that surety appeals. The court denied plaintiff a personal judgment against surety, and it is therefrom plaintiff files cross-appeal.

Although the parties appear to agree that the statutory laborer's lien laws apply and compliance or noncompliance therewith are decisive of this appeal, we do not think they apply in the circumstances.

The question of the respective rights of plaintiff and surety in the fund and hence the correctness of the judgment thereon involved a construction of 85 O.S. 1941 §49, which is as follows:

"The right of compensation granted by this Act, and any claim for unpaid compensation insurance premium, shall have the same preference or lien, without limit of amount against the assets of the employer as is now or hereafter may be allowed by law for a claim for unpaid wages for labor."

In support of the judgment it is urged by plaintiff that the section makes plaintiff's claim for unpaid premiums a lien upon all of the assets of the contractor; that the lien being the same as that of labor is subordinate only to taxes and hence prior to claim of surety; and that if filing of lien statements was necessary to preserve the same an equivalent therefor was had by the filing of this action within eight months.

For error in the judgment so rendered and in not rendering judgment for surety the latter urges that the quoted statute is not self-executing and hence no general lien obtains; that the statutory provisions for labor liens which alone could perfect the lien have no application and if applicable the lien was not preserved by filing statement; and that surety by reason of its assignment from the contractor and its payment of the material claims had an equitable right to payment from the fund on authority of the holding of this court in Fidelity National Bank v. United States Casualty Co., 191 Okla. 496, 131 P. 2d 75.

The contention that said section 49 is self-executing and therefore that plaintiff's claim for insurance premiums is a lien upon all the assets of contractor and thus inclusive of the retained percentage of the contract price is contrary to our holding in Pauline Oil & Gas Co. v. Fischer, 185 Okla. 108, 90 P. 2d 411. Under the terms of the statute a claim for premiums occupies the same position as a claim for compensation. We there had under consideration a claim for compensation wherein a similar contention was made. Construing the section, which was then 13373, O. S. 1931, we held:

"Section 13373, supra, purports to grant a lien the same as a lien 'for wages for labor.' That latter lien is

provided for in section 11007, O. S. 1931, 42 Okla. St. Ann. sec. 92, and is enforceable in the specific manner provided by the next following sections. Enforcement of such lien by laborers in the manner specified is essential to preserve the right to such lien (McGuyre v. Duncan, 100 Okla. 217, 229 P. 119), and that rule likewise applies to claimants for unpaid compensation insurance premiums, who assert a lien under section 13373, supra (Pacific Petroleum Co. v. Sunbeam Oil Co., 176 Okla. 293, 54 P. 2d 1054). It would, therefore, seem that section 11007, supra, and section 13373, supra, are not self executing, but must be read in connection with the methods provided for enforcement of the liens therein mentioned. . . .

"There is some language in plaintiff's brief indicating a contention, in substance, that a lien in favor of Rainbolt for compensation mentioned in section 13373, supra, attached to all of the property of the Geraldine Oil Company from the time Rainbolt commenced proceedings to enforce his right of compensation under the Workmen's Compensation Act. That contention could not be sound, for the reasons heretofore stated, and because no such provision or legislative intent can be found from the statutes. If that position could be sound, then any purchaser of an item of real or personal property, however insignificant, would be under the burden of ascertaining whether his vendor was the employer of labor, or might be liable primarily or secondarily on any workmen's compensation claim in any manner pending before the Industrial Commission."

It follows from this holding, to which we adhere, plaintiff's right to a preference or lien and the status thereof are to be measured by the law applicable to labor lien under the circumstances involved. And such fact on authority of our holding in Exchange Nat. Bank of Tulsa v. Okeya Oil & Gas Co., 107 Okla. 62, 229 P. 765, would preclude the idea that the lien claimed could be held to apply to assets not involved in the transaction giving rise to the claim. In that case we held:

"Where a contractor does work on two separate structures and under two separate contracts with the owner, he cannot tack on to his claim for money due him under one contract the debt due him under the other contract and thereby extend the time allowed him by sections 7462-4, Comp. Stats. 1921, in which to file a statement and obtain a lien under said statutes. If he combines both claims in one statement and therein asserts a claim in one lump sum for moneys due under the two contracts together, without specifying the particular amount due under each contract separately, his claim for lien is void as against purchasers, creditors, and other lien claimants."

In view of the law the lien of plaintiff, if any, on account of any one of the several contracts would not be a lien upon the fund retained in either of the other contracts, and would be limited to that retained under the contract wherein the claim or proportionate part thereof arose.

There is cited by plaintiff no statute providing a labor lien upon the percentage of the contract price retained on public works as here. It is manifest that those statutes which provide for a lien upon the production of one's labor (42 O. S. 1941 § 92) or upon real estate or improvements thereon (42 O. S. 1941 § 141) can have no application and the question whether there was or was not a compliance with the provisions of the statute in order to preserve the lien is immaterial to the pertinent question here which is whether there obtained a preference or lien independently of the mechanic's lien statutes and if so the status thereof with respect to the claim of the surety. And we consider the answers to these questions are to be found in Fidelity Nat. Bank v. United States Casualty Co., supra, relied on by surety, wherein we said:

"A highway contractor's surety, paying claims of materialmen and taking assignments of their claims, became

subrogated to the rights of the materialmen.

"A surety on the bond of a public contractor conditioned in compliance with 61 Okla. Stat. Ann. §1 (sec. 10983. O. S. 1931) for the payment of all indebtedness incurred for labor and material furnished in the construction of a public improvement under a contract with the state, has an equity, under the doctrine of subrogation, in money retained by the state under the authority of its contract for said public improvement, for the payment of laborers and materialmen, which equity is superior to the claim of a bank lending money to the contractor for the prosecution of the work and taking an assignment of all moneys to become due under the contract."

In the opinion there is said:

"In the case of Martin v. National Surety Co., supra, it was said:

" 'In United States Fidelity & Guaranty Co. v. Sweeney et al., 80 F. 2d 235, 238, Judge Gardner, in delivering the opinion of this court, said: "Laborers and materialmen, however, have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors. Belknap Hardware & Mfg. Co. v. Ohio River Contract Co. (C.C.A. 6) 271 F. 144. The statutory requirement of a bond to protect them is not inconsistent with such equitable rights. American Surety Co. v. Westinghouse Elec. Mfg. Co. (C.C.A. 5) 75 F. 2d 377. There is a recognized equitable right of unpaid furnishers of labor or materials to such part of the contract price as may remain in the possession of the government after the completion of the work by the contractor. Riverview State Bank v. Wentz (C.C.A. 8) 34 F. 2d 419; Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; Farmers' Bank v. Hayes (C.C.A. 6 ) 58 F. 2d 34; American Surety Co. v. Westinghouse Elec. Mfg. Co. (C.C.A. 5) 75 F. 2d 377. Appellant was bound by contract to pay the claims for labor and material and upon paying these claims it was entitled to be subrogated to the superior equities of the laborers and materialmen, and when payment was made its rights related back to the time of making the contract." . . . .

"The surety company discharged the obligations of the contractor to the materialmen and thereupon became subrogated to any equitable rights of the materialmen in the funds so retained, that is, 'it is substituted for, or stands in the shoes of, the materialmen.' Riverview State Bank v. Wentz, supra."

The origin and nature of the preference is declared in American Surety Co. v. Westinghouse Electric Mfg. Co., 75 Fed. 2d 377, which is cited in support of the rule. Therein, after mentioning the Federal statute requiring contractor to give bond, there is said:

"In the absence of a statute on the subject, furnishers of labor or material to a contractor have the legal status of general creditors. Before the enactment of any federal statute on the subject, it was not unusual for the government to recognize the existence of a moral duty to protect furnishers of labor or material for a public work against dishonest or reckless contractors by requiring the insertion in a contract for such work of a provision requiring payment by the contractor of amounts owing by him to furnishers of labor or material for the work contracted for, or entitling the government to withhold payments to the contractor if he failed to pay promptly those who furnished labor and materials. Greenville Sav. Bank v. Lawrence (C.C.A.) 76 F. 545. It appears from decisions referred to below that the government's observance of that duty in practical and effective ways was the precursor of judicial recognition of an enforceable equitable right of unpaid furnishers of labor or materials for that work in or to a part of the contracted price thereof remaining in the possession of the government after the completion of that work by the contractor. Nothing contained in the statute in pursuance of which the bond on which appellant was surety was executed is inconsistent with the government's recognition of the continued existence of a duty to protect furnishers of labor or material, with the result of making such furnishers beneficiaries of the funds withheld by

the government. The conclusion that, in the circumstances disclosed in the instant case, the appellees had claims on the fund in question superior to the claim asserted by the appellant is supported by the decision in the case of Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 391, 52 L. Ed. 547."

Applying the doctrine to the instant case, it is manifest that the claims for labor and material by operation of law enjoyed a preference to that of general creditors of the contractor and superior to the contractor and his assigns; that the preference applies only to the percentage that was retained upon the project upon which the claim arose; and that upon payment by surety of the claims for material it became subrogated to the preferential rights thereof. If in the instant case there were unpaid claims for labor, they could not be defeated by the contractor's assignment to surety because the contractor's rights are subordinate to those of labor. They would not be defeated by surety's right of subrogation to the material claims because the claims of labor are independent thereof and of equal dignity in the matter of priority. Such being true the equal status of plaintiff's claim for insurance premium is dependent solely upon whether by force of said section 49 it occupies the same status as would a claim for labor. And that the preference so accorded claims for labor are within the purview of said statute, we deem clear and so hold.

Under the law giving rise to the preferences the claims for labor and those for materials are given parity. The holdings of this court in Central Finance Corporation v. Brown, 175 Okla. 528, 54 P. 2d 196, and other cases, relied on by plaintiff to establish priority of claims for labor over those for material, are based upon statute (42 O. S. 1941 §96) which has specific reference to certain statutory liens and have no application to the situation here.

Plaintiff's position on its cross-appeal is that the trial court erred in refusing recovery of the premiums due on defendant's employers' liability insurance. Plaintiff does not assert that the surety's bond obligated it to pay insurance premiums, but claims that it promised to pay them by the same agreement under which it paid the material bills. This agreement was oral and the negotiations therefor were by conversations between Park A. Holbert and S. D. Freeborn, acting for the defendant, and R. H. Siegfried and C. W. Christensen, agents for the surety company at Tulsa, Okla., and a Mr. Cunningham, an employee or official of said company.

We have reviewed the evidence, and from our examination of the record we conclude that plaintiff's contention as to the surety's agreement to pay the employers' liability insurance premiums is not supported by the evidence and presents no ground for reversing the trial court's judgment on that claim.

The judgment of the trial court awarding plaintiff a lien upon all of the assets of Park A. Holbert and Ray Holbert, individually and as copartners, and decreeing same to be a first and prior lien upon the funds held in court and directing disbursement thereof accordingly, is reversed. It is further ordered that the cause be remanded to trial court with instructions to decree that plaintiff's claim for insurance premiums and surety's claim for materials furnished by right of subrogation have a preference that is coequal but that such preference obtains only in any retained percentage of contract price to the extent such claim is for premiums earned or material furnished on account of the project in which the percentage was retained. And it is further ordered that out of the fund retained in court there be awarded and directed to be paid to the plaintiff such an amount thereof as will equal the total of its proportionate parts of the moneys retained or the Verdigris and

536

Anadarko projects and the remainder of the fund to be awarded to surety.

HURST, C.J., and RILEY, WELCH, CORN, and LUTTRELL, JJ., concur. DAVISON, V.C.J., and ARNOLD, J., dissent.