STROUD OIL RECLAIMING CO., an Oklahoma corporation, and the Quapaw Company, Inc., a corporation, Plaintiffs in Error,

v.

COMMUNITY STATE BANK OF BRISTOW, Oklahoma, and the City of Bristow, Oklahoma, Defendants in Error..

No. 42678.

Supreme Court of Oklahoma.

Oct. 20, 1970.

James & Butts, Stroud, Charles S. Woodson, Drumright, for plaintiffs in error.

Loeffler & Allen, Harry McMillan, Bristow, for defendants in error.

WILLIAMS, Justice:

This is an appeal from a judgment sustaining demurrers filed by defendants Community State Bank of Bristow, Oklahoma ("Bank"), and the City of Bristow, Oklahoma ("Bristow") to a petition initiating this action filed by plaintiff Quapaw Company, Inc. ("Quapaw") and to a cross petition filed in the action by defendant Stroud Oil & Reclaiming Co. ("Stroud").

Presented here for our determination is the question of whether mechanics and materialmen furnishing materials and services to a contractor doing work for a city under circumstances of the city not having required the giving of the statutory bond for their protection have an equitable claim on proceeds of the contract yet in the hands of the city as against general creditors and assignees of the prime contractor. We hold they do.

In January, 1967, the Bristow Park Department entered into a contract with D & B Supply Co. ("D & B") providing for

the paving of certain areas at a city park. D & B was to receive $3500.00 for the designated work.

In performing the contract work during February, 1967, D & B allegedly obtained certain materials and services from plaintiff Quapaw and defendant Stroud. These materials consisted of rock or chat material delivered by Quapaw and asphalt road oil delivered and sprayed by Stroud. At the completion of the paving work, D & B filed a claim with Bristow for the contract price of $3500.00. On its face, the claim, dated February 27, 1967, shows an acknowledgment by what is apparently a city employee of the completion of the contract and an assignment, also dated February 27, of the claim and an authorization for the city clerk to issue a warrant in payment thereof to defendant Bank. The claim was apparently approved by the governing board of Bristow on March 6.

Approximately one month later, Quapaw instituted the action on appeal herein in the trial court and joined therein as defendants D & B, Bristow, Bank and Stroud. Quapaw alleged that pursuant to an oral agreement, it had delivered chat and road material, in the amount of $928.05, to D & B in the latter's performance of the above described paving contract with Bristow and that such account was unpaid. Quapaw's petition, including a subsequent amendment thereto, further alleged that Bristow had not yet issued a warrant in payment of the claim; that its unpaid account for material was superior to the assignment of the claim held by Bank; and that Stroud also had an interest in the funds of the contract but such interest was inferior to the interest of Quapaw. It was also alleged that the bond required by 61 O.S.1961 § 1 to protect persons furnishing labor and material on public projects had not been given by D & B. Plaintiff sought judgment for its unpaid amount, attorney's fees, an order directing Bristow to pay the contract sum into court, and a determination that its claim was prior and superior to Bank's and Stroud's claims.

Stroud filed an answer and cross petition, and alleged therein it had provided road oil, in the amount of $1005.01, to D & B for the performance of the paving contract and that this amount was unpaid. Stroud sought judgment for its unpaid account, attorney's fees, and a determination that its claim was prior and superior to Bank's and at least co-equal to the claim of Quapaw.

D & B filed no pleadings in the trial court. As noted above, defendants Bristow and Bank filed demurrers to the petition of Quapaw and the cross petition of Stroud. From the judgment of the trial court sustaining these demurrers and an order overruling their motions for new trial, Quapaw and Stroud appeal.

On appeal, Stroud and Quapaw although admitting that there was no statutory lien available to them, contend that as materialmen who furnished materials to a contractor performing work under a contract with a public body, they have an equitable lien superior to the interests of the contractor, his creditors and assigns, in the funds of the contract still in the possession of the public body. To support this contention, plaintiffs in error cite Fidelity Natl. Bank of Oklahoma v. United States Casualty Co., 191 Okl. 496, 131 P.2d 75, and Standard Acc. Ins. Co. v. United States Casualty Co., 199 Okl. 530, 188 P.2d 204.

In *Fidelity,* a contractor who had completed work under a contract with the State Highway Commission, was discovered not to have paid certain materialmen furnishing materials for the project. The contract involved empowered the Highway Commission to retain payments due the contractor until satisfied that claims for labor and material had been paid. At the completion of the work, the public body had in its possession funds due the contractor which the surety maintained should be delivered to it rather than one of contractor's creditors who previously had advanced amounts secured by an assignment of the funds due contractor from the Highway Commission.

The questions presented on appeal in *Fidelity* were necessarily whether laborers and materialmen had an equitable preferential right to funds due a contractor but still in possession of a public body and whether a surety paying the claims of laborers and materialmen was subrogated to the latter's preferential right to such funds. In holding that laborer or materialmen had a preferential right to the funds in the possession of the Highway Commission, this Court, at 131 P.2d 77, quoted with approval the following language from Martin v. National Surety Co., 8 Cir., 85 F.2d 135:

"In United States Fidelity & Guaranty Co. v. Sweeney et al. [8 Cir.], 80 F.2d 235, 238, Judge Gardner, in delivering the opinion of this court, said: 'Laborers and materialmen, however, have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors. Belknap Hardware & Mfg. Co. v. Ohio River Contract Co. [6 Cir.], 271 F. 144. The statutory requirement of a bond to protect them is not inconsistent with such equitable rights. American Surety Co. v. Westinghouse Elec. Mfg. Co. [5 Cir.], 75 F.2d 377. There is a recognized equitable right of unpaid furnishers of labor or materials to such part of the contract price as may remain in the possession of the government after the completion of the work by the contractor.'"

The Court further held that a surety paying claims of laborers and materialmen was subrogated to the latter's equitable preferential right to the retained fund.

Further, in Standard Acc. Ins. Co. v. United States Casualty Co., supra, the Court held that the equitable right of unpaid furnishers of labor and material have in the funds retained is superior to the claims of creditors and *assignees* of the contractor.

Bristow and Bank contend that the above authorities are not applicable herein because the contracts involved therein authorized the public body to retain the funds in which unpaid laborers and materialmen were held to have an equitable preferential right. In the instant case, the short memorandum contract between D & B and Bristow does not provide for retention of funds. Rather, it merely provides for D & B to do certain work for a certain specified sum.

It is clear from the authorities cited in *Fidelity* and *Standard,* supra, that the doctrine of an equitable preferential right in favor of unpaid laborers and materialmen against funds in the possession of a public body was adopted by our Court from Federal decisional law. An early case recognizing the doctrine was Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, a case dealing with a fund retained by contract. In Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547, the Supreme Court again recognized the equitable lien of unpaid laborers and materialmen against funds held by a public body, made no mention of a retained percentage under the contract, and held the surety who had paid the claims entitled to a prior equity on a general balance due under a contract in preference to a bank holding an assignment from the contractor.

In *Standard,* supra, we stated:

"The origin and nature of the preference is declared in American Surety Co. v. Westinghouse Electric Mfg. Co., 5 Cir., 75 F.2d 377, 379, which is cited in support of the rule. Therein, after mentioning the Federal statute requiring the contractor to give bond, there is said: 'In the absence of a statute on the subject, furnishers of labor or material to a contractor have the legal status of general creditors. Before the enactment of any federal statute on the subject, it was not unusual for the government to recognize the existence of a moral duty to protect furnishers of labor or material for a public work against dishonest or reckless contractors by requiring the insertion in a contract for such work of a provision requiring payment by the contractor of amounts owing by him to

furnishers of labor or material for the work contracted for, or entitling the government to withhold payments to the contractor if he failed to pay promptly those who furnished labor and materials. Greenville Sav. Bank v. Lawrence [4 Cir.], 76 F. 545. It appears from decisions referred to below that the government's observance of that duty in practical and effective ways was the precursor of judicial recognition of an enforceable equitable right of unpaid furnishers of labor or materials for that work in or to a part of the contract price thereof remaining in the possession of the government after the completion of that work by the contractor. Nothing contained in the statute in pursuance of which the bond on which appellant was surety was executed is inconsistent with the government's recognition of the continued existence of a duty to protect furnishers of labor or material, with the result of making such furnishers beneficiaries of the funds withheld by the government.' "

A somewhat analogous question as involved herein was presented to the Court of Appeals in Lacy v. Maryland Casualty Co., 4 Cir., 32 F.2d 48. There, the court, after reviewing both Prairie State Nat. Bank of Chicago v. United States, supra, and Henningsen v. United States Fidelity & Guaranty Co., supra, held that where a surety had advanced funds to complete a contract on which a contractor defaulted, it was entitled to all funds held by the public body, and due the contractor, not just that percentage which by contract was authorized to be retained. In its opinion, the Court noted that on principle there should be no difference between a retained percentage and other funds in the possession of the contractee and due contractor but not yet paid.

In our opinion, in adopting the doctrine of an equitable preferential right or lien, this Court has also adopted the reasons for such doctrine, i. e., there is an obligation to protect laborers and materialmen

dealing with a contractor constructing a public work. In recognizing an obligation to protect such persons, we cannot discern any reason why the equitable lien in their favor should be limited only to amounts authorized by contract to be retained. Rather, on principle, the lien should be applied to any funds in the possession of the public body that are due and owing to the contractor pursuant to his performance of the contract. From the above discussion, it appears the development of the lien in the cited Federal decisions supports our view of which funds are subject to its application. In our opinion, those persons who contributed their labor or materials to the performance of a public contract have an equitable right in the funds allocated to pay for the public work and this right is prior and superior to the claims of the contractor's general creditors or assigns.

Bank and Bristow, citing Clark v. Board of County Com'rs, 62 Okl. 7, 161 P. 791 and Bushnell v. Haynes, 56 Okl. 592, 156 P. 343, contend that this Court previously has held that where the statutory bond required by 61 O.S.1961, § 1, has not been given by the contractor, as was the situation herein, a laborer or materialman dealing with such contractor does so at his own risk or peril. However, these authorities were promulgated prior to our adoption of the equitable lien doctrine in *Fidelity,* supra, and *Standard,* supra. As noted above, the Federal decisions recognized the equitable lien prior to the enactment of a statute requiring a bond to protect laborers and materialmen. In our opinion, the failure of Bristow herein to require the statutory bond to protect laborers and materialmen, and the failure of D & B to give such bond, did not place Stroud and Quapaw in a position of proceeding forward at their own peril. In a situation where the required bond has not been given, we believe there is even more reason to hold that an unpaid materialman has an equitable lien

on contract proceeds in possession of the public body.

The judgment of the trial court is reversed and the cause is remanded for new trial.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, BLACKBIRD, JACKSON, LAVENDER and McINERNEY, JJ., concur.